# STATE BOARD OF ASSESSORS *v.* COMPTOIR NATIONAL D'ESCOMPTE.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 157.   Argued October 28, 29, 1903.—Decided November 30, 1903.

There is no inhibition in the Federal Constitution against the right of a State to tax property in the shape of credits where the same are evidenced by notes or obligations held within the State, in the hands of an agent of the owner for the purpose of collection or renewal, with a view to new loans and carrying on such transactions as a permanent business.

A foreign corporation, whose business in Louisiana was in the hands of an agent, furnished to customers sums of money and took from them collateral security ; for reasons satisfactory to the parties, instead of taking the ordinary evidence of indebtedness, the customers drew checks, never intended to be paid in the ordinary way, but intended by the parties to be held as evidence of the amount of money actually loaned ; these loans could be satisfied by partial payments from time to time, interest being charged upon the outstanding amounts, and if not paid at maturity the collateral was subject to sale ; when paid, the money might be again loaned by the agent to other parties, or remitted to the home office, and the business was large and continuing in its character.

*Held*, that as such checks were given for the purpose of evidencing interest-bearing debts, they were the evidence of credit for money loaned, localized in Louisiana, protected by its laws, and properly taxable there under the provisions of the tax law of 1898 of Louisiana, which has already

been sustained as constitutional by this court. *New Orleans* v. *Stempel,* 175 U. S. 309.

THE Comptoir National d'Escompte de Paris, a corporation organized under the laws of the republic of France, filed its bill in the Circuit Court of the United States for the Eastern District of Louisiana, seeking to enjoin collection of certain taxes and to cancel the assessment thereof. These taxes were undertaken to be collected under an assessment upon office furniture, $1000 ; money in possession, $20,000; "money loaned on interest, all credits, and all bills receivable for money loaned on interest or advanced for goods sold, $175,000." There is no contest as to the taxes assessed upon the furniture or money in possession, but it is sought to enjoin the collection of the tax assessed upon the $175,000, which for the year 1891 is the sum of $4550.

Complainant avers that it has no money loaned on interest, credits or bills receivable for money loaned on interest or advanced, or for goods sold within the State of Louisiana, subject to taxation; that its credits in said State are debts due to it, of which it has no legal evidence of indebtedness within the State, and that these debts have no legal situs in Louisiana, and can only be taxed at the domicile of the Comptoir in Paris. That the taxes assessed were in violation of the constitution and jurisprudence of Louisiana, and were also in violation of the Fourteenth Amendment to the Federal Constitution, inasmuch as the action complained of denied to the complainant the equal protection of the laws and deprived it of its property without due process of law.

The respondent took issue upon these allegations, and avers that complainant has credits within the State, amenable to the taxing power, and the assessment upon the $175,000 was legal and valid.

Testimony was taken by a special examiner under an order of court, and the case partially heard, and was then referred to a master, who made separate findings of fact and conclusions of law.

From the testimony adduced and the findings of the fact of the master, it appears that the complainant has had an average of $20,000 on deposit in money in the banks of New Orleans, upon which it has paid taxes annually. It has also paid an annual license tax upon business done. The assessment upon the $175,000 arises from moneys advanced by the local agent of the Comptoir in New Orleans upon transactions wherein customers draw checks, in the ordinary form, upon the Comp-'toir, and at the same time deposit collateral sufficient to secure the amount of money advanced, accompanying the check and collateral with a power of attorney, reciting, among other things, that, whenever the customer shall become indebted to the Comptoir for money lent or for any overdraft upon any check, the Comptoir is to have a lien upon the securities deposited, and upon failure to reimburse any overdraft, or to pay any indebtedness when due the Comptoir to have the right to sell the collateral and apply the proceeds upon such liabilities.

The agent of the Comptoir testified that when the money was paid it was remitted back to Paris by an exchange transaction. It also appeared that the agent had authority to make loans as above without consulting the office in Paris, and that the transactions were continuing and large, and amounting to more than a million of dollars a year.

The Comptoir also did a large business in the sale of exchange directly to customers, and relied largely for its gain upon the profits in exchange transactions between this country and Europe. The collateral deposited as security by customers is kept in New Orleans and is not remitted to the home office in Paris. The money needed for the transactions of the Comptoir arises from foreign exchange drawn from London, Paris, Berlin, etc. Speaking of the transactions from which the present controversy arises, the agent testifies:

"Q. Did you charge interest on your overdrafts? A. Yes, sir.

"Q. Well, what evidence of indebtedness, besides the account on your books with your customers, have you that these

people owe you anything at all? A. We have a regular settlement which we make every month.

"Q. When you put $50,000, we will say, to the credit of one of your customers on your books, does he give you any receipt for your money previous to your crediting him with that on your books? A. I do not credit him; I pay him.

"Q. You pay him —— A. Yes, sir; I pay him the money.

"Q. What evidence have you that he owes you anything? A. I have got a check from him; he is overdrawn on my books.

"Q. For the amount you have loaned him? A. Yes, sir.

"By Mr. ZACHARIE:

"Q. Suppose a man comes to you and says, Here, I have got certain securities, certain warehouse receipts or bills of lading, I want to borrow $50,000. You say to him, We will let you have it. Now he deposits with you these bills of lading or these warehouse receipts or these bonds, whatever you choose to accept as security for the loan. Do you give him a receipt for those? A. No. I am going to explain the business. Well, a client comes to me and says to me, and says I want $50,000, and I propose to give you such collateral, bills of lading for cotton or for grain or warehouse receipts or bonded warehouse receipts for cotton or for cake or cotton seed meal—any kind of those products. If I approve, ready to do the business, I say, Yes. Well, there are two ways of letting him —— that money; very often I open a credit in his favor on the Comptoir National d'Escompte de Paris in Paris or in London; then he draws against that credit—I mean to say, he sells his draft on the Comptoir to anybody he pleases, either in New Orleans or New York, if the loan is for a short period. Instead of asking him to draw I will draw it myself and hand him the money.

"Q. You sell your own exchange? A. Then he is overdrawn on my books, and to show that he is overdrawn I tell him you draw a check on me and he gives me that check. And then I make him sign a general letter of hypothecation (which will

be shown to the attorney). Outside of that we have nothing of importance—I don't see anything else.

"Q. These securities and checks remain in your office here in New Orleans? A. Yes, sir; the checks are cash vouchers for the cashier, who has them to show that he paid the money.

"Q. Suppose that the amount drawn by him does not come up to the amount of the value of this hypothecation, this hypothecated stuff, what is done there, at the close of the transaction? A. The general letter of hypothecation does not state any amount. It states simply it is a power of attorney.

"Q. I say what is done when the transaction is concluded? He has got all of the money that you agreed to give him and the collaterals in your hands are worth more than that. What do you do there? A. We have a margin. You mean to say if the collateral is worth more than the money we give him?

"Q. Yes. A. Then we have a margin; then we are protected if there is a fall in the price of the securities he gives us.

"By Mr. Dupré:

"Q. Does he take back the check he has given? A. No, sir.

"Q. When the transaction is concluded what becomes of that check that he has drawn against your bank? A. The check is a cash voucher; it stays among the cash vouchers of the day on which it is paid and remains perpetually in the custody of the Comptoir National d'Escompte de Paris for the cashier to show that he has paid that check.

"Q. In other words, it is not returned to the man when he pays his debt? A. Because we keep an account current which varies each day.

"Q. The agent of the Comptoir National d'Escompte de Paris in New Orleans has full authority to act for the Comptoir National d'Escompte de Paris in this city? A. Yes, sir.

"Q. He does not have to confer by cable or otherwise with his principals in Paris or France as to whether he will make one loan or another, a particular loan? A. He has authority to loan certain amounts, or make certain transactions by exchange according to instructions he has from the other side.

"Q. I mean, if I went in there he would not have to cable to ask about me?    A. No, sir.

"Q. When in answer to the fifth interrogatory you say the money was obtained by drawing foreign exchange on Europe, you mean to say that the cash which you lent in the city of New Orleans was obtained by drawing this foreign exchange on Europe and getting it cashed here in the banks?    A. Getting it in New York.

"Q. And the cash was forwarded to you from New York? A. Yes, sir.

"Q. And that was the money that you lent?    A. Yes, sir.

"Q. Do you know, or can you state approximately, the amount of loans that you made during the year 1900?    A. No, I cannot.

"Q. About?    A. Well, I made so many loans, you know, for a short period, and I can't state the total amount; it would be too far away, the exact amount.

"Q. Was it over a million dollars?    A. Taken it altogether, yes.

"Q. How much over a million?    A. I do not know.

"Q. Was it ever two millions?    A. No, sir.

"Q. As I understand you, a great many of these loans were for short periods, so that you turned the money over and over again during the year?    A. Yes, sir."

The master summarized his conclusion of fact as follows:

"To sum up the facts: It is found that the complainant has paid its annual license tax on its exchange business, as provided by law, and has paid, or offered to pay, its annual tax on the average amount of $20,000 of money on deposit in Louisiana; and that the assessment, complained of, of $175,000 for the year 1901, is on the credits accruing to it from the advances made by it in New Orleans, through its agents here, on bills of lading and similar documents by way of collateral.    These credits were either in the form of credits on Paris or London, giving

the right to the Louisiana debtors to draw on the complainant in Paris or London, or they were transactions at short time by which the debtors were overdrawn on the books. In both cases, they amounted to overdrafts secured by collateral. In the previous year, which is not now in question, the complainant took non-negotiable notes to represent these credits, and these were considered in the case in the 52 Annual, which will be hereafter referred to again; but in the instant case, for the year 1901, the question is of these overdrafts."

*Mr. H. G. Dupré* and *Mr. F. C. Zacharie*, with whom *Mr. E. K. Skinner* was on the brief, for appellants:

The right of the State to tax personal property within its limits has been upheld, even where the owner was neither a citizen nor a resident of the State imposing the tax. *Táppan* v. *Merchants' Bank,* 19 Wall. 490; *State R. R. Tax Case,* 92 U. S. 575; *Coe* v. *Errol,* 116 U. S. 517; *Pullman* v. *Pennsylvania,* 141 U. S. 18.

Neither fictions like *mobilia sequuntur personam,* nor yet sound legal principles like *stare decisis,* have availed to check this court in its evident determination to maintain the authority of the States in these matters of taxation. *Savings Bank* v. *Multonomah County,* 169 U. S. 421; *New Orleans* v. *Stempel,* 175 U. S. 309; *Bristol* v. *Washington County,* 177 U. S. 133; *Blackstone* v. *Miller,* 188 U. S. 205. See also *Adams* v. *Colonial & U. S. Mtg. Co.,* 34 So. Rep. 460.

The assessment complained of transgresses no provision of the constitution of the State of Louisiana, nor any law of that State. Article 225 of the Constitution of 1898 declares that "all property should be taxed in proportion to its value." In obedience to that constitutional mandate the General Assembly, in the same year, adopted Act 170, which imposes a tax on the assessed valuation of all property within the State, except such as is expressly exempt by law. § 1, Act 170, defines "property." *Bluefields Banana Company Case,* 49 La. Ann. 43.

The only way in which foreign exchange figures in this matter

is that the complainant gets the money which he loans out in cash in New Orleans, by getting the cash which he gives the borrower which has been obtained by drawing complainant's own exchange bills on Europe or New York. This constant introduction in the testimony of its dealing in foreign exchange, is a mere subterfuge to confuse the mind of the court, under the pretense that the complainant's business is entirely in.foreign exchange. This was the old subterfuge unsuccessfully attempted in 52 La. Ann. p. 1330.

The following circumstances show that the change was an attempted evasion of taxation: 1st, the refusal of the witness to state the exact time when the change was made, although it was in his power so to state; 2d, the decisions of the Louisiana state courts as an incentive to the change; 3d, his excuse of his client's demands for the change, uncorroborated by a single witness. The change is not such a device as will be recognized and given effect to by the court. As to evasions of taxation, see Cooley on Taxation, 2d ed. 415, 423; Welby on Assessments, p. 317, § 174; Greenhold on Public Policy, 48, 152; 12 Eng. & Am. Ency. 2d ed.; *Mitchell* v. *Commissioners*, 9 Kansas, 235, affirmed 91 U. S. 208; *Shotwell* v. *Moore*, 45 Ohio St. 632, affirmed 129 U. S. 590.

These decisions show that the courts look upon such transactions as indefensible, and consider them improper evasions of the duty of the citizen to pay his share of the taxes necessary to support the government.

This doctrine has been uniformly sustained by the Supreme Courts of the States, whenever the issue has been presented. *Jones* v. *Seward*, 4 N. W. Rep. 946; 10 Nebraska, 122; *Dixon County* v. *Halstead*, 23 Nebraska, 697; 37 N. W. Rep. 621; *Drexler* v. *Tyrrell*, 15 Nevada, 115; *Holly Springs Sav. &.Ins. Co.* v. *Supervisors of Marshall County*, 52 Mississippi, 281; 24 Am. Rep. 668; *Sheldon et als.* v. *Pruessner*, 22 Lawyers' Annot. Rep.709 (Kansas); *Ogden* v. *Walker*, 59 Indiana, 460; *Poppleton* v. *Yamhill Co.*, 8 Oregon, 340; *Waller* v. *Jaeger et al.*, 39 Iowa, 228; *Bellinger* v. *White*, 5 Nebraska, 401.

*Mr. Harry H. Hall* for appellee:

It is not within the power of a State to tax property unless the same is actually or by contemplation of law within its jurisdiction. *St. Louis* v. *Ferry Co.*, 11 Wall. 429; *State Tax on Foreign Held Bonds*, 15 Wall. 300; *McCulloch* v. *Maryland*, 4 Wheat. 428; *United States* v. *Erie R. R. Co.*, 106 U. S. 327; *Hagar* v. *Reclamation District*, 111 U. S. 701; *Erie R. R. Co.* v. *Pennsylvania*, 153 U. S. 628; *Railroad Co.* v. *Jackson*, 7 Wall. 262; *Delaware R. R. Tax*, 18 Wall. 206; *Dewey* v. *Des Moines*, 173 U. S. 193; *Louisville & Jeffersonville Ferry Co.* v. *Kentucky*, 188 U. S. 385; *Railey* v. *Assessors*, 44 La. Ann. 765.

While tangible personal property, by a fiction of law, has been said to follow the domicile of its owner, it may be taxed at its actual "situs;" but it has never been held that an incorporeal thing, a mere abstraction, such as the naked obligation to pay a debt, could be so taxed. For an incorporeal thing, being an abstraction, can have no "situs." *State Tax on Foreign Held Bonds*, 15 Wall. 300.

As to mortgages and bonds and negotiable notes, see *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Dundee* v. *School District*, 10 Sawyer, 52.

A mortgage, so far as taxation is concerned, is a mere security. Hence, the question of the situs of notes and bonds is generally held not to be affected by the fact that the paper was or was not secured by mortgage, or, if so secured, by the location of the mortgaged premises. 15 Wall. 300; 51 N. J. Law, 140; 100 U. S. 491; 42 Connecticut, 426; 19 Am. Rep. 546; 12 Iowa, 539; 26 N. J. Law, 564; 68 Indiana, 247; 3 Colorado, 349.

Some courts, however, proceeding on the theory that a mortgage is an interest in land, have held it taxable in the State where the land lies, although held by a non-resident. 11 Oregon, 67; 50 Am. Rep. 462; 91 Michigan, 78; 1 Clarke Ch. N. Y. 42; 52 Pa. St. 140; 123 Pa. St. 594; 72 Pa. St. 72; 66 Pa. St. 73.

The general rule is, that debts follow the person of the creditor, and are to be taxed at his domicile. 4 Woods (U. S.),

206; 38 California, 461; 42 Connecticut, 426; 19 Am. Rep. 546; 43 Georgia, 336; 50 Georgia, 387; 108 Illinois, 113; 14 Indiana, 354; 59 Maryland, 472; 26 Am. Rep. 87; 68 Maryland, 247; 54 Iowa, 57; 65 Iowa, 110; 4 Bush (Ky.), 135; 8 B. Monroe (Ky.), 1; 41 La. Ann. 645; 41 La. Ann. 1015; 44 La. Ann. 760; 50 Maryland, 354; 25 Ohio St. 10; 3 Mo. C. S. C. 374; 27 Gratt. (Va.) 354; 25 California, 601; 33 Georgia, 113; 2 Oregon, 327; 13 S. W. Rep. 30; 75 Texas, 476.

In the taxation of personal property, two inconsistent doctrines often come into conflict; the one *mobilia sequuntur personam,* commanding that the property shall be taxed at the owner's domicile, on the theory that the personalty has no other situs; the other, that it shall be taxed like real property, where it is situated. Ordinarily, the first rule will prevail, and, as a general rule, personal property is taxable at the domicile of its owner. Cooley on Taxation, 2d ed. pp. 56–372; Burroughs on Taxation, par. 40; 14 Illinois, 163; 56 Am. Dec. 493; 12 Maryland, 464; 47 Connecticut, 477; 138 N. Y. 543; 10 Massachusetts, 514; 17 Massuchusetts, 461; 4 E. D. Smith (N. Y.), 675; 34 N. J. Law, 45; 23 N. J. Law, 532; 24 N. J. Law, 56; 30 N. J. Law, 13; 11 N. Y. 565; 15 N. Y. 316; 122 Pa St. 386; 14 Allen (Mass.), 366; 84 Iowa, 407; 17 Vermont, 609.

In regard to assets evidenced by negotiable bills, notes and bonds, there are two lines of decisions.

The view which is probably the more logical is, that the paper is mere evidence of indebtedness, and that the debt itself can have no actual situs wherever the paper may be; hence, the situs, in the eye of the law is, as in the case of ordinary debts, at the residence of the creditor. 131 Massachusetts, 24; 48 Ohio St. 648; 33 Iowa, 376; 16 Fed. Rep. 11; Cooley on Taxation, 2d ed. p. 15; 15 Wall. 300; 30 La. Ann. 876; 31 Am. Rep. 232; 106 Illinois, 25; 24 Pac. Rep. 182; 11 So. Rep. 393.

Money, while a mere medium of exchange, is, so far as taxation questions are concerned, a form of tangible personal property. It may be taxed at the owner's domicile, but is generally

taxed where it is actually situated.   1 Nevada, 397; 48 N. Y. 310; 2 McCrary (U. S.), 337; 44 La. Ann. 91; 66 How. Pr. (N. Y.) 190; 4 Blatchford, 263; *Blackstone* v. *Miller*, 188 U. S. 187.

For Louisiana decisions, see *Meyer* v. *Pleasant, Sheriff*, 41 La. Ann. 645; *Liverpool &c.* v. *Assessors*, 44 La. Ann. 760; *Clason & Co.* v. *City*, 46 La. Ann. 1; *Parker* v. *Strauss*, 49 La. Ann. 1173; *State ex rel.* v. *Board of Assessors*, 47 La. Ann. 1544; *Comptoir National* v. *Board of Assessors*, 52 La. Ann. 1319.

In paying the tax upon this average balance in New Orleans, the Comptoir recognizes the correctness of the decisions that money sent by a foreign creditor to its local agent in another State, to be there employed in business and retained there for investment, under the protection of its laws, is liable to be taxed.   Under such conditions the rule, *mobilia sequuntur personam*, does not apply.   *New Orleans* v. *Stempel*, 175 U. S. 309, quoting from cases cited *supra* and *Catlin* v. *Hall*, 21 Vermont, 152; *Goldcart* v. *People*, 106 Illinois, 25; *In re Jefferson*, 35 Minnesota, 215; *Blackstone* v. *Miller*, 188 U. S. 189, citing *Morley* v. *Railway Co.*, 146 U. S. 162; *Kelly* v. *Rhoads*, 188 U. S. 1; *Diamond Match Co.* v. *Ontonagon*, 188 U. S. 84; *Walker* v. *Jack*, 88 Fed. Rep. 580, and cases cited.

A foreign corporation stands upon the same footing as an individual in respect to its credits arising from obligations incurred in another jurisdiction, nor does it by such loans bring its entire capital into that jurisdiction.   *Liverpool &c.* v. *Assessors*, 44 La. Ann. 760; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196.

While the State has not the power to localize an abstract credit, it may tax tangible personal property at the place of its location away from the domicile of its creditors.

Tangible personal property is assessed sometimes at the domicile of the owner; sometimes at the place where it is situated.   25 California, 30; 39 California, 112; 21 Indiana, 335; 27 Indiana, 288; 92 Indiana, 222; 26 Illinois, 300; 79 Am. Dec. 377; 53 Illinois, 45; 80 Kentucky, 489; 3 Maryland, 259; 16 Gray (Mass.), 292; 60 Mississippi, 142; 15 N. J. Law, 320; 23 N. J.

Law, 517; 17 Nevada, 383; 7 R. I. 317; 2 Spears (S. C.), 719; 14 B. Monroe (Ky.), 521; 91 Alabama, 398; 114 U. S. 622.

The State may, however, and often does, make it taxable at its actual situs.   Dillon on Municipal Corporations, 4th ed. par. 786; Welty, Assessments, par. 34; 26 Illinois, 300; 79 Am. Dec. 377; 23 N. J. Law, 517; 23 N. Y. 224; 51 Barb. (N. Y.) 352; *Tappan* v. *Bank*, 19 Wall. 490; *United States* v. *Bank*, 8 Robinson La. Rep. 262.

The cases cited show that the Legislature of Louisiana has never attempted to localize mere debts due to foreign creditors, for the purpose of taxation, and such attempt, if made, would be in violation of the constitution of the State.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The constitution of the State of Louisiana of 1898, article 225, declares that all property shall be assessed in proportion to its value.   Section 1 of the act of 1898, passed by the general assembly of the State, defines "property" to include "all personal property, . . . all rights, credits, bonds and securities of all kinds, promissory notes, open accounts and other obligations, all cash. . . . all money loaned at interest, . . . and all movable and immovable, corporeal and incorporeal articles or things of value, owned and held and controlled within the State of Louisiana by any person in any capacity whatsoever."   Section 7 of the act provides that it shall be the duty of the assessor to place upon the tax roll all property subject to taxation.   "This shall apply with equal force to any person or persons representing in this State business interests that may claim a domicile elsewhere, the intent and purpose being that no non-resident, either by himself or through any agent shall transact business here without paying to the State a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising

from business done in this State are hereby declared assessable within this State, and at the business domicile of said non-resident, his agent or representative." This act undertakes to give to the State the right and authority to assess and collect taxes upon all bills receivable, obligations and credits within the State.

This legislation was before this court in the case of *New Orleans* v. *Stempel*, 175 U. S. 309, in which it was sought to tax certain notes secured by mortgage on real estate in the city of New Orleans. The notes were owned in New York, but were in the hands of an agent of the owner in New Orleans, who collected the proceeds thereof and the interest as it became due and deposited the same in a bank at New Orleans. In that case, the decisions of the Supreme Court of Louisiana, constru-ing its constitution and laws, particularly the act in question, were exhaustively reviewed by Mr. Justice Brewer, and the conclusion reached that the act, as interpreted by the Supreme Court of the State, permitted the taxing of the notes in the hands of the agent, and that such action did not impair any right secured by the Federal Constitution. Since the decisions which were in review in the *Stempel* case, the Supreme Court of Louisiana, in a suit brought by the present complainant against the board of assessors, has had before it a case involving the right to tax credits and moneys of the complainant under a state of facts in most respects identical with that now before the court, the difference being that when the Comptoir loaned money upon bills of lading or other collateral security, it took the non-negotiable note of its customer, which note was can-celled either by the payment of the amount due or the exhaus-tion of the collateral. *Comptoir National d'Escompte de Paris* v. *Board of Assessors*, 52 La. Ann. 1319. In the method of doing business shown in the present case, instead of giving a non-negotiable note, the customer gives to the Comptoir his check, which check is not returned but held as an evidence of the indebtedness, and is later sent to the office of the Comptoir at Paris. While called "checks," and so referred to in the

record and by the parties in their dealings, the instrument delivered to the Comptoir, in form an ordinary check as though drawn for payment on presentation from moneys deposited, had no such function. The money was paid to the customer upon the security of the collateral, and the so-called check taken and held as a memorandum of the indebtedness to the Comptoir.

The exact question is whether these checks, secured by collateral held by the agent, are evidence of credits for money loaned upon interest having a local situs in New Orleans and constitutionally taxable within the meaning of the Louisiana statutes.

In this case we are not dealing with that branch of the business of the Comptoir which relates to bills of exchange sold to its customers, but the assessment is sought to be made upon those credits which arise when money is loaned and advanced or paid in the State to the customer upon collateral security and the latter's check is taken therefor. The transaction from which the alleged credits arise is briefly this: The customer applies for a loan of money and offers as security a bill of lading or other collateral and the money is paid to him. Instead of a note the Comptoir takes the check of the customer, which is regarded as an overdraft, upon which the customer can make payment from time to time and upon which he is charged interest, and upon the non-payment of the check the collateral is subject to sale.

Is this a credit, for money lent on interest, taxable under the laws of Louisiana as interpreted by the Supreme Court of that State?

The real transaction between the parties was intended to create and did create a debt held for the Comptoir by its agent in the State of Louisiana and evidenced by the check and secured by the collateral, which debt, when paid, created a fund in the hands of the agent subject to loan and reinvestment by him without consultation with the principal in such sense as to localize the credit for the purpose of taxation as effectually

VOL. CXCI—26.

as it would if a non-negotiable note had been taken as was done
in the case decided in the 52 Louisiana Annual, *supra*.   It is true
that the agent testifies that the money when repaid was remitted
by an exchange transaction to Paris, and the average balance
in money in New Orleans banks was $20,000, which has been
assessed without objection; but it is equally clear that the trans-
actions of this kind were large and the funds subject to the
control of the agent, who could lend them at will to customers.

Whether this change, from notes to checks, was purposely
made with a view to escaping taxation, as is argued by the
respondents, or is a different method of evidencing the debt
for the convenience of the customer, as is argued by the com-
plainant, it is, in our judgment, equally a credit for money
lent, localized in Louisiana, within the scope of the taxing laws
of that State as construed by its Supreme Court.

Was the attempted taxation in violation of the Federal
Constitution?

Speaking to this subject, in *New Orleans* v. *Stempel, supra,*
Mr. Justice Brewer said:

"When the question is whether property is exempt from
taxation, and that exemption depends alone on a true con-
struction of a statute of the State, the Federal courts should be
slow to declare an exemption in advance of any decision by the
courts of the State.   The rule in such a case is that the Federal
courts follow the construction placed upon the statute by the
state courts, and in advance of such construction they should
not declare property beyond the scope of the statute and
exempt from taxation unless it is clear that such is the fact.
In other words, they should not release any property within
the State from its liability to state taxation unless it is obvious
that the statutes of the State warrant such exemption, or
unless the mandates of the Federal Constitution compel it."

It may be taken as a general rule of the law of taxation of
personal property that such property can only be taxed at the
residence of the owner, or at such place as it has acquired a
situs, which will subject it to the taxing power of the State

where found. In its application to tangible property, there is little difficulty in applying this principle. The difficulty arises in determining whether a credit or chose in action has acquired a local situs in contemplation of law at a place other than the domicile of the owner in such sense as will permit the State to tax it in the place of its localization. The cases are numerous, both state and Federal, which recognize the right of the State, in view of the protection and remedial rights which its laws give to the owner of intangible property, such as notes and bills, to require from such property a contribution to the funds of the State, to be collected by taxation, for the purpose of maintaining and enforcing the laws which give force and effect to such obligations. This right has been the subject of such recent adjudication in this court that we will only notice some of the later decisions. We have already referred to *New Orleans* v. *Stempel*. The question came before the court in *Bristol* v. *Washington County*, 177 U. S. 133, in which case it was held that the personal property of a non-resident of the State of Minnesota, in the shape of notes payable at the office of the agent in Minnesota, where the mortgages securing the notes were retained by the agents, and the notes were returned from time to time when required for renewal, collection or foreclosure, the agents collecting the money and making loans in the name of the principal, generally on their own judgment, remitting to the principal the collections when required, or investing them in new loans, was properly taxable in Minnesota. Still later the subject was under consideration in *Blackstone* v. *Miller*, 188 U. S. 189, in which it was held that a deposit by a citizen of Illinois in a trust company in New York was within the taxing power of the latter State, even though the depositor intended to withdraw the money for further investment, and although the deposit had been subjected to taxation in Illinois as a part of an estate to which it belonged.

From these cases it may be taken as the settled law of this court that there is no inhibition in the Federal Constitution against the right of the State to tax property in the shape of

credits where the same are evidenced by notes or obligations held within the State, in the hands of an agent of the owner for the purpose of collection or renewal, with a view to new loans and carrying on such transactions as a permanent business.

The maxim, *Mobilia sequuntur personam*, which was applied in the court below as forbidding taxation of the checks in the hands of the agent in New Orleans, has been frequently held to be but a fiction of law, having its origin in considerations of general convenience and public policy, and not to be applied to limit and control the right of the State to tax property within the jurisdiction, it being intended to permit the owner to deal with his personalty according to the law of his domicile, and to make testamentary disposition of it according to the law where he is rather than that of the situs of the property. It was intended for convenience, and not to be controlling where justice does not demand it.

Applying these principles to the facts in the case, we have no doubt that these checks, secured in the manner stated, and given for the purpose of evidencing an interest-bearing debt, were the evidences of credits for money loaned, localized in Louisiana, protected by its laws, and properly taxable there.

The Comptoir was a foreign corporation; its business in Louisiana was in the hands of an agent; it furnished to the customer a sum of money and took from him a collateral security; for reasons satisfactory to the parties, instead of taking the ordinary evidence of indebtedness, the customer drew a check, never intended to be paid in the ordinary way, but intended by the parties to be held as evidence of the amount of money actually loaned; this loan could be satisfied by partial payments from time to time, interest being charged upon the outstanding amounts, and if not paid at maturity the collateral was subject to sale; when paid, the money might be again loaned by the agent to other parties, or remitted to the home office, and the business was continuing in its character.

It is true the money to be paid to the customer was generally

obtained by the Comptoir drawing its draft upon New York or upon its home office, and a large part of the business of the Comptoir was in selling foreign exchange, but we cannot perceive that the transaction between the parties was any the less a loan because of the source from which the money was obtained.

We find nothing in the requirements of the Federal Constitution or the statutes of the State of Louisiana, as construed by its Supreme Court, which should exempt such property from bearing its burden of taxation for the public benefit. It follows that the Circuit Court erred in holding otherwise and in granting a perpetual injunction.

*Decree reversed and cause remanded with instructions to dismiss the bill.*