**PARMELEE, ESTATE OF, In Re**

Ohio Probate Court, Cuyahoga Co

Decided Nov 21, 1934

Squire, Sanders & Dempsey, Cleveland, for the exceptors.

W. H. Middleton, Jr., Waverly, for the Tax Commission.

## OPINION

By BREWER, J.

This cause came on to be heard on the exceptions of the Union Trust Company of Cleveland, Ohio, and Rollin A. Wilbur, as co-executors of the will of James Parmelee, deceased, to the determination of the inheritance tax levied by this court on the successions to certain assets belonging to said estate situated in Cuyahoga County, Ohio.

The facts involved in this case are as follows:

James Parmelee was a non-resident of the state of Ohio, being at the time of his death, a resident of Washington, D. C. He died testate on the 19th day of April, 1931. Under the provisions of his will he gave, devised and bequeathed 25% of the residue of his estate to the Protestant Episcopal Cathedral Foundation of Washington, D. C. and 15% of said residue to the Corcoran Gallery of Art of Washington, D. C.

Said James Parmelee prior to his death, to-wit, on November 24, 1926, entered into a trust agreement with The Union Trust Company of Cleveland, Ohio, under which he transferred to said trust company. as trustee, certain corporate stocks.

Under the provisions of said trust agreement the trustee is given the power to handle, manage, sell, invest, re-invest, transfer, assign, deliver, mortgage, pledge, make advances to or for the account of and deal with, the trust estate in such manner and form as to it shall seem wise;

except that so long as the donor continue to live and is capable of acting the trustee shall make any sale, investment, re-investment, etc., as the donor shall in writing direct, and in the event that the donor shall become incapable of exercising the powers given him by the provisions of the agreement, then such powers shall be exercised by his representative, Rollin A. Wilbur.

The donor expressly reserved the right to substitute any duly incorporated trust company, wherever located, as trustee under said trust agreement and also the right to revoke the trust and terminate it at any time at his election. Under the provisions of the agreement, the trust terminated on the death of the donor and became payable to his estate, and the assets of the trust estate passed under the donor's will.

The petition to determine the inheritance tax was filed on May 31, 1933. This petition set forth the assets belonging to said trust estate as consisting of corporate stocks, which were appraised by the county auditor for the purpose of the inheritance tax in the sum of $1,415,313, and real property appraised in the sum of $27,850.

The court fixed a tax on the successions to said trust estate in the total sum of $44,790.02. To the assessment of this tax, Rollin A. Wilbur and The Union Trust Company, trustee of the estate of James Parmelee, deceased, for and on behalf of the beneficiaries of said estate, filed exceptions on the ground that the corporate stocks held at the death of said decedent by The Union Trust Company under the terms of said trust agreement are not subject to the jurisdiction of the state of Ohio.

Supplementary exceptions were filed on the ground that the legatees, the Corcoran Gallery of Art of Washington, D. C. and The Protestant Episcopal Catheral Foundation of the District of Columbia, are institutions of learning within the District of Columbia; that the District of Columbia does not impose an inheritance, estate or transfer tax on property given, devised or bequeathed by a resident thereof to an institution of learning within the state of Ohio, and are, therefore exempt under §5334, GC, from the inheritance tax.

The issues joined by these exceptions are well stated by counsel for the exceptors, as follows:

1. Does the imposition by the state of Ohio of an inheritance tax measured by the value of shares of stock in trust with an Ohio trust company, violate any of the provisions of the Fourteenth Amendment

to the Constitution of the United States where the deceased donor of the trust was a non-resident and reserved during his life the right to revoke the trust and complete direction and control over the investment, re-investment and management of the trust property?

2. Are educational institutions located in the District of Columbia exempt from inheritance taxation in Ohio under the term §5334, GC?

3. Are the Protestant Episcopal Cathedral Foundation of Washington, D. C. and the Corcoran Gallery of Art of Washington, D. C., educational institutions?

The exceptors contend that the state of Ohio is without jurisdiction to impose an inheritance tax on the successions to the estate of James Parmelee and that the imposition of such tax is a violation of the Fourteenth Amendment to the Constitution of the United States, which provides that no state shall deprive any person of his property without due process of law.

The power of the states to impose inheritance taxes on the transfer of property within their borders has been dealt with by the United States Supreme Court in many cases one of the earliest of which is Blackson v Miller, (188 U. S. 189), decided in 1903, and the latest of which is First National Bank of Boston v Maine which was decided in 1932.

Under Blackson v Miller, which permitted taxation of successions to tangible and intangible personal property by more than one state an intolerable situation was developed; but by recent decisions of the Supreme Court, Frick v Pennsylvania, 268 U. S. 473, Farmers Loan Co. v Minnesota, 280 U. S. 204, Baldwin v Missouri, 281 U. S. 586, and First National Bank v Maine, 284 U. S. 312 this power of taxation has been limited to such an extent, that now under the rule pronounced in Boston v Maine, the only thing other than tangible personalty situated in a state other than the domicile that might be subject to such taxation is intangible personalty that might have acquired a "business situs," in a state other than the domicile of the decedent.

The decision in the case of Frick v Pennsylvania, 268 U. S. 473, was rendered June 1, 1925, and was the first of the series of decisions which curtail the power of the several states to tax the transfer of or the succession to the property belonging to estates of non-resident decedents.

Henry C. Frick died a resident of Pennsylvania, on December 2, 1919, leaving a large estate, which he disposed of by will.

His estate, besides real and personal property in Pennsylvania, included tangible personal property having its actual situs in New York, and tangible personalty having its situs in Massachusetts.

The taxing officers in levying a tax under the Pennsylvania statute on the transfer of the property belonging to the Frick estate included the value of the tangible personalty in New York and Massachusetts as well as that in Pennsylvania. The United States Supreme Court held that the state in order to impose either a property tax or a tax on the transfer of property on the death of the owner must have jurisdiction over the thing that is taxed. That is to say, in other words, an inheritance tax in respect to tangible personal property may be levied only by the state in which it is situated. In January 1930, the United States Supreme Court held in Farmers Loan & Trust Company, Exr. v Minnesota, 280 U. S. 204, that, when bonds and certificates of indebtedness issued by a state and not used in business in that state are owned at the time of his death by a person domiciled in another state in which they are kept, an attempt by the state in which they were issued to tax their transfer by inheritance is repugnant to the Fourteenth Amendment.

In May 1930, in Baldwin v Missouri, 281 U. S. 586, the Supreme Court, held that credits for deposits in banks in Missouri, coupon bonds of the United States and promissory notes executed by citizens of Missouri, which belonged to a deceased resident of Illinois, all physically located within the state of Missouri, were not within the jurisdiction of that state for taxation purposes.

In Beidler et, Exrs. v South Carolina, 282 U. S., 1, decided November, 1930, the Supreme Court held that the assessment of a tax on the transfer of indebtedness, (consisting of open unsecured accounts) due from a corporation domiciled in South Carolina to a deceased resident of Illinois was void under the Fourteenth Amendment.

In Boston v Maine, 284 U. S. 312, decided January 4, 1932, it was held that where a stockholder dies in a state other than that in which the corporation was created, the state of his domicile has power to tax the succession to the stock, but that the state of incorporation has not such power under the Fourteenth Amendment.

By virtue of these decisions, the theory of inheritance taxation as laid down in Blackson v Miller, 188 U. S. 189, is com-

pletely overruled, and a new principle of law is established in respect to such taxation, and this is, that the state of domicile only has the power to impose an inheritance tax on the succession to intangible personal property.

To this rule there is, however, one possible exception. The Supreme Court in Boston v Maine, in concluding its opinion said:

"We do not overlook the possibility that shares of stock, as well as other intangibles may be so used in a state other than that of the owner's domicile as to give them a situs analogous to the actual situs of tangible personal property. See Farmers Loan Company case, supra, at p. 213. That question heretofore has been reserved, and it is still reserved to be disposed of when, if ever, the proposition shall be presented for our consideration."

Paragraph 6 of the syllabus to Farmers Loan & Trust Company v Minnesota, 280 U. S. 204, is as follows: "This case does not present the question whether choses in action that have acquired a situs for taxation other than at the domicile of their owner through having become integral parts of some local business, may be taxed a second time at his domicile. P. 213."

Counsel for the exceptors in their brief in their endeavor to define the nature of "business situs," cite four cases of the United States Supreme Court which reflect the attitude of the court as to what constitutes a business situs. One of these cases is New Orleans v Stempel, (175 U. S. 309) and it involved the following facts: Residents of the state of New York were the owners of moneys deposited in a bank in New Orleans, Louisiana, and also of notes secured by mortgages on real estate situated in New Orleans; said notes and mortgages were in the city of New Orleans in possession of an agent of the owners, who collected the interest and principal as they became due and deposited the same in a bank in New Orleans to the credit of the owners. The question presented by these facts was, whether because the owners were domiciled in New York, the moneys so deposited in a bank in Louisiana, and the notes secured by mortgages situated and held as heretofore described were subject to a personal property tax assessed by the state of Louisiana. It was held that said property was subject to taxation in Louisiana. The court in this case cites the case of Catlin v Hall, 21 Vt. 152, and quotes with approval the following statement made by Vermont court, "if persons residing abroad bring their property and invest it in this state for the purposes of deriving profit from its use and employment here * * * their property should yield its due proportion towards the support of the government which thus protects it." A personal property tax was assessed on notes secured by mortgages on real estate situated in the state of Minnesota which were owned by a citizen of New York, but were held by an agent who had full authority from the owner to make loans, to take and retain all notes and securities, to collect and retain both the principal and interest of such loans, and to keep the same permanently invested as far as possible. The owner died and the notes and mortgages were subsequently taken by his heirs to New York, but the agent in Minnesota continued to manage the property, collecting the interest and principal and investing and re-investing the same as he had under the authority of the owner. The Supreme Court held in Bristol v Washington Co., 177 U. S. 133, that personal property of a citizen of and resident in one state, invested in bonds and mortgages in another state, is subject to taxation in the latter state. The Supreme Court in its decision quotes the following statement from the opinion rendered in the case of In Re Jefferson, 35 Minn., 215: "A credit, which cannot be regarded as situated in a place merely because the debtor resides there, must usually be considered as having its situs where it is owned, at the domicile of the creditor. The creditor may give it a business situs elsewhere; as where he places it in the hands of an agent for collection or renewal, with a view to re-loaning the money and keeping it invested as a permanent business."

Another case of the United States Supreme Court which involves business situs in State Board of Assessors v Comptoir National D'Escompte, 191 U. S. 388. A foreign corporation, whose business in Louisiana was conducted by an agent loaned money to its customers and took from them collateral security, and their signed evidence of the indebtedness; the collateral security and the notes or obligations were held within the state in the hands of the agent who had authority to make loans, and to collect or renew the same without

consulting his principal, with a view to carrying on such transactions as to permanent business. These credits were taxed by the state of Louisiana and the tax was upheld.

Another case of the Supreme Court, which I wish to cite in connection with the question of business situs, is the Metropolitan Life Insurance Company of New York v City of New Orleans, 205 U. S. 395. An insurance company incorporated in the state of New York, and where its home office was located issued policies of life insurance in the state of Louisiana and for the purpose of issuing such policies and doing other business had a resident agent whose duty it was to superintend the company's business generally in said state. The company was engaged in the business of lending money to holders of its policies, and taking the policies as the security for payment. The loans were approved by the company, who forwarded to the agent a check for the amount of the loan, with a note to be signed by the borrower. The agent procured the signature of the borrower to the note, attached the policy to it, and forwarded both note and policy to the home office in New York. When the interest and principal became due they were collected by the agent and transmitted to the home office. A tax assessed on "credits, money loaned, bills receivable, etc." was found to be validly assessed.

In Buck v Beach, 206 U. S. the Supreme Court held that the mere presence of notes within the state which is not the domicile of the owner, and where no business is done therein by the owner of the notes or his agent relating in any way to the capital evidenced by the notes assessed for taxation, does not bring the debts of which they are the written evidence within the taxing jurisdiction of that state, and that a tax thereon is illegal and void under the due process clause of the Fourteenth Amendment.

An examination of these cases seems to indicate that the elements essential to the establishment of a business situs are these: Money or property constituting capital placed in the hands of an agent, resident of a state other than the domicile of the owner, for the purpose of investment in some kind of a continuing or permanent business with a view of profit, the agent being vested with at least sufficient power to manage the business without consulting

his principal but whose control need not be absolute.

Considering the Parmelee case in the light of the foregoing cases, it cannot be said that the assets of the Parmelee trust estate were employed in any kind of a permanent business or in any sort of a commercial transaction for the purpose of profit. No money or property belonging to the Parmelee estate was employed as capital in any business as that term is commonly understood; and the clause of the trust agreement dealing with the powers conferred on the trustee clearly shows that the trustee had practically no control over the assets of the trust, but was at all times subject to the control and direction of the owner. In consideration of these facts and the aforementioned cases, it cannot be asserted with any degree of conviction that the assets of the Parmelee trust had acquired a business situs in this state.

The case of Safety Deposit & Trust Company v Virginia, 280 U. S. 83, on which the tax commission grounds its case, has the effect, however, of broadening the jurisdiction of the state in respect to the taxation of the intangible of non-residents.

In this case, a resident of Virginia transferred stocks and bonds to the Safety Deposit & Trust Company of Baltimore, Maryland, in trust. The trustee was given power to collect the income arising from said trust and to accumulate the income and to pay one-half of such accumulated income and one-half of the principal of said trust to each of his two sons on his arriving at the age of twenty-five years, and if either died without issue before reaching that age, the corpus of the estate, together with the accumulated income was to be paid to the surviving son. The donor reserved the power of revocation to himself, but died without exercising it. The trust company paid taxes regularly to the state of Maryland. The donor's personal representative and his two sons were residents of Virginia. The courts of Virginia sustained a Virginia tax on the whole corpus of the trust estate by regarding the sons, in conjunction with the administrator, as the real owners of it. Held, that the tax was on property beyond the jurisdiction of the state and invalid under the Fourteenth Amendment.

The most significant fact in regard to the cases just discussed (New Orleans v Stempel, 175 U. S. 509, Bristol v Washington Co., 177 U. S., 1933, State Board of Assessors v Comptoir National D'Escompti, 191

U. S. 388, the Metropolitan Life Insurance Company v New Orleans, 295 U. S. 395, and Safety Deposit & Trust Company v Virginia, 280 U. S. 83) in so far as they relate to the case at bar is that in all of these cases the tax assessed was a property tax; whereas, the tax assessed in the Parmelee case, is an inheritance tax. The foundation on which the inheritance tax law rests is different than that on which the law permitting the assessment of a tax on property is based. The inheritance tax is a tax levied on a privilege, that is, on the right to succeed to or to transmit property by death (Knowlton v Moore, 178 U. S. 41; Blackstone v Miller, 188 U. S. 189); and therefore the cases involving a property tax are not in point.

In a recent case, in the matter of the Estate of Guy O. Frank, decided by the Supreme Court of the state of Minnesota, June 22, 1934, the case of Safety Deposit & Trust Company, was cited as authority for assessing an inheritance tax on the succession to intangible personal property of a non-resident decedent's estate. The facts of this case are quite similar to those that obtain in the Parmelee case. A resident of North Dakota transferred to a trust company having its domicile in the state of Minnesota property, consisting of promissory notes and other intangible assets to be held in trust for the benefit of certain persons who were also residents of the state of North Dakota. The trustee was granted authority to hold, possess, care for and manage the property, and to invest and re-invest all principal sums of money, including authorized accumulations of income, in good income bearing securities authorized for the investment of trust funds in the hands of a trust company under the laws of the state of Minnesota. The donor reserved to himself the income for life, as well as the right to alter, amend, or revoke the trust and also the right to approve investments. There was no right of revocation in the cestuis que trustent and on the donor's death the legal ownership vested in the Minnesota trustee. Held, "that Minnesota has the right to impose an inheritance tax upon the corpus of the trust. The rule of mobilia sequuntur personam governing the taxable situs of intangibles must yield to the established fact of legal ownership, actual presence and control elsewhere than the domicile of the equitable owner."

In rendering this decision the Supreme Court of Minnesota denies that there is any distinction between the inheritance tax and a property tax. The court says: "The pertinent facts in the instant case cannot be distinguished from those in the above case (Safety Deposit & Trust Company v Virginia). As before stated, the only difference is, that here the tax is one on the transfer of the property, while in that case it was a direct tax on the property. On the principle we see no distinction; the situs of the property must first be determined; the same rules apply in determining situs, whether the tax to be imposed be a direct tax on the property or upon the succession thereof; to impose a tax of either kind the state must have jurisdiction of the thing to be taxed or of the owner."

The principle thus applied by the Supreme Court of Minnesota is in direct conflict with the principle announced in Farmers Loan & Trust Company v Minnesota, 280 U. S., 204; Baldwin v Missouri, 281 U. S. 586; Beidler v Tax Commission, 282 U. S. 1; and First National Bank v Maine, 284 U. S. 312, and that the state of domicile is the only jurisdiction which is authorized to impose an inheritance tax on intangible personal property. The Supreme Court of the United States in First National Bank of Boston v Maine, speaking in reference to the assessment of the inheritance tax on the succession to intangible personal property, makes this significant statement: "The rule of immunity from taxation by more than one state, deducible from the decisions in respect to these various and distinct kinds of property, is broader than the applications thus far make of it. In its application to death taxes, the rule rests for its justification upon the fundamental conception that the transmission from the dead to the living of a particular thing, whether corporeal or incorporeal, is an event which cannot take place in two or more states at one and the same time. In respect to tangible property, the opposite view must be rejected as connoting a physical impossibility; in the case of intangible property, it must be rejected as involving an inherent logical self-contradiction. Due regard for the processes of correct thinking compels the conclusion that a determination fixing the local situs of a thing for the purpose of transferring it in one state, carries with it the implicit denial that there is a local situs in another state for the purpose of transferring the same thing there. The contrary conclusion as to intangible

property has led to nothing but confusion and injustice by bringing about the anomalous and grossly unfair result that one kind of personal property cannot, for the purpose of imposing a transfer tax, be within the jurisdiction of more than one state at the same time, while another kind, quite as much within the protecting reach of the Fourteenth Amendment, may be, at the same moment, within the taxable jurisdiction of as many as four states, and by each subjected to tax upon its transfer by death, an event which takes place, and in the nature of things can take place, in one of the states only.

"A transfer from the dead to the living of any specific property is an event single in character and is effected under the laws, and occurs within the limits of a particular state: and it is unreasonable and incompatible with a sound construction of the due process of law clause of the Fourteenth Amendment to hold that jurisdiction to tax that event may be distributed among a number of states."

The law of Ohio is entirely in accord with the theory of the inheritance tax as heretofore expressed.

It has been held repeatedly by the Supreme Court of Ohio, that the inheritance tax is not a tax on property ▮▮▮▮▮▮ but a tax on the right to receive property (State v Ferris, 52 Oh St 312; Hagerty v State, 55 Oh St, 613, 621, 45 NE, 1046).

Sec 5332, GC, is our authority for levying the inheritance tax, and the portion of the statute which is pertinent to the question under discussion is as follows:

"Sec 5332 GC. A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution or corporation, in the following cases:
1. When the succession is by will or by the intestate laws of this state from a person who was a resident of this state at the time of his death.
2. When the succession is by will or by the intestate laws of this state or another state or country, to property within this state, from a person who was not a resident of this state at the time of his death."

The phrase, "within this state" occurring in paragraph 2 of §5332 GC is defined in §533 GC, which says:
3. "Within this state" when predicated of tangible property, means physically located within this state; when predicated of intangible property, shall be conclusively construed to include the following:
(f) Any intangible personal property, employed in a commercial transaction within this state.
(i) In addition to the property specifically enumerated herein, all intangible personal property within the jurisdiction of this state shall be subject to the tax levied by this subdivision of this chapter. §5332, GC levies the inheritance tax on the succession when it is by will or by the intestate laws of this state from a deceased resident of the state and also on the succession when it is by will or by the intestate laws of this state or another state or country, to property within this state, from a person who was not a resident of this state at the time of his death.

The right to transmit or to receive property is a right that can be granted only by the state of the domicile.

James Parmelee died a resident of the District of Columbia. The successions to his estate are governed by the law of his domicile and are not in any ▮▮▮▮▮▮ way subject to the law of the state of Ohio. The portion of the Parmelee estate situated in Ohio as heretofore stated cannot be considered to be within the jurisdiction of this state for the purpose of taxation within the meaning of sub-paragraphs (f) and (i) of §5331 GC.

It is difficult to see how the state of Ohio can levy an inheritance tax on the successions to the property of the Parmelee estate, which are subject to the laws of another state without violating the provisions of the Fourteenth Amendment. To do this, is to levy a tax on a right or privilege granted by another state, which the United States Supreme Court says cannot be done. Frick v Pennsylvania, 268 U. S. 473; Boston v Maine, 284 U. S. 312.

It is, therefore, the opinion of this court that the state of Ohio cannot validly impose an inheritance tax on the successions to the Parmelee estate in the possession of a trustee in this state. To impose such a tax under the circumstances that obtain in the present case constitutes a violation of the Fourteenth Amendment. Hence the exceptions in this respect will be sustained.

Exceptions are taken to the assessment of the inheritance tax on the successions of the Episcopal Cathedral Foundation and the Corcoran Gallery of Art, institutions of Washington, D. C., on the ground that the

District of Columbia does not impose an inheritance tax on property bequeathed to an institution of learning within this state. · The matter of exempting institutions of learning from this tax is governed by §5334, GC, the pertinent portion of which is as follows:

"Sec 5334 GC. The succession to any property passing to or for the use of the state of Ohio, or to or for the use of a municipal corporation or other political subdivision thereof for exclusively public purposes, or public institutions of learning within this state, or institutions of learning within any state of the United States which does not impose an inheritance, estate or transfer tax on property given, devised or bequeathed a resident thereof to an institution of learning within this state. * * *"

Inasmuch as I have heretofore expressed the opinion that the intangible personal property of the Parmelee estate, now located in Ohio, is not subject to the inheritance tax, this exception is to a large extent disposed of.

Sec 5334, GC was undoubtedly enacted for the purpose of ameliorating the evils of multiple taxation.

· The District of Columbia does not impose an inheritance tax on the successions to the estates of its deceased· residents, and it is inconceivable in consideration of this fact that the legislature of the state of Ohio intended the benefits of this provision to apply to estates of non-resident decedents, which are not subjected to a tax ·by the state of domicile.

The District of Columbia cannot extend a reciprocal exemption to an Ohio institution. This statute is reciprocal in character and in meaning, and to adopt any other interpretation would simply leave open a way of avoiding the inheritance tax, and depriving the state of a sovereign right.

The tax assessed in the Parmelee estate was assessed on succession to both real and personal property and the exceptions, insofar as they have not already been disposed of, should be overruled.