# METROPOLITAN LIFE INSURANCE COMPANY OF NEW YORK v. CITY OF NEW ORLEANS.

## ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 199.    Argued January 31, 1907.—Decided April 8, 1907.

Neither the fiction that personal property follows the domicil of the owner, nor the doctrine that credits evidenced by notes have the situs of the latter, can be allowed to obscure the truth; and personal property may be taxed at its permanent abiding place although the domicil of the owner is elsewhere.

Where a non-resident enters into the business of loaning money within a State and employs a local agent to conduct the business, the State may tax the capital employed precisely as it taxes the capital of its own citizens, in like situation, and may assess the credits arising out of the business, and the foreigner cannot escape taxation upon his capital by temporarily removing from the State the evidences of credits which, under such circumstances, have a taxable situs in the State of their origin. Loans made by a New York life insurance company on its own policies in Louisiana are taxable in that State although the notes may be temporarily sent to the home office.

115 Louisiana, 698, affirmed.

THE facts are stated in the opinion.

*Mr. Charles Pollard Cocke*, with whom *Mr. William Wirt Howe* and *Mr. Walker B. Spencer* were on the brief, for plaintiff in error:

The property sought to be taxed was beyond the limits and jurisdiction of the State of Louisiana, and the statute of Louisiana of 1898, as construed and applied, deprives the plaintiff in error of its property without due process of law, in violation of the Fourteenth Amendment. *State Tax on Foreign-held Bonds*, 15 Wall. 300; *Railroad Co. v. Jackson*, 7 Wall. 262; *Murray v. Charleston*, 96 U. S. 432, 440; *Erie Railroad Co. v. Pennsylvania*, 153 U. S. 628–648; *New Orleans v. Stempel*, 175 U. S. 309, and *Board of Assessors v. Comptoir National d'Escompte*, 191 U. S. 389, distinguished.

The Supreme Court of Louisiana cannot be held to have

decided that any statute of Louisiana imposed on plaintiff in error, as a condition to doing business in the State, payment of taxes on property in its hands beyond the jurisdiction of the State. But, if the court did so decide, plaintiff in error may, nevertheless, assert in this court that the statute is unconstitutional.

The State cannot by statute validly exact from a foreign corporation, as a condition, either to entering the State, or as a condition to continuing to do business therein, an agreement or stipulation that it will not avail itself of the rights and privileges conferred on it by the Federal Constitution. *Insurance Co.* v. *Morse,* 20 Wall. 445; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 335; *Barrow* v. *Burnside,* 121 U. S. 186; *Southern Pacific Co.* v. *Denton,* 146 U. S. 202; *Barrow Steamship Co.* v. *Kane,* 170 U. S. 100; *Blake* v. *McClung,* 172 U. S. 239; *Security Mutual Life Ins. Co.* v. *Prewitt,* 202 U. S. 257.

The utmost that the State can do is to provide that any foreign corporation which asserts a right or privilege under the Federal Constitution shall be deprived of its license to do business in the State. Its power, in other words, may be exerted to punish, but not to prevent, an appeal to constitutional immunity. *Security Mutual Life Ins. Co.* v. *Prewitt, supra.*

*Mr. F. C. Zacharie, Mr. George H. Terriberry* and *Mr. H. Garland Dupre,* with whom *Mr. Samuel L. Gilmore* was on the brief, for defendants in error:

The Supreme Court of Louisiana having decided that there was nothing in the constitution and laws of Louisiana, opposed to the taxing of these notes, this court will not go behind the decision of the highest court of the State upon this point. *Michigan Central R. R. Co.* v. *Powers,* 201 U. S. 291.

In *Blackstone* v. *Miller,* 188 U. S. 189, and *Washington County* v. *Bristol,* 177 U. S. 133, this court affirmed the power of state taxation of notes which were given in the State and were payable in the State, although the notes were held

in New York until such time as it became necessary to collect or renew them. This was done by forwarding the notes back to the agent in the State which was the domicil of the debtor.

MR. JUSTICE MOODY delivered the opinion of the court.

This is a writ of error to review the judgment of the Supreme Court of Louisiana, which sustained a tax on the "credits, money loaned, bills receivable," etc., of the plaintiff in error, a life insurance company incorporated under the laws of New York, where it had its home office and principal place of business. It issued policies of life insurance in the State of Louisiana and, for the purpose of doing that and other business, had a resident agent, called a superintendent, whose duty it was to superintend the company's business generally in the State. The agent had a local office in New Orleans. The company was engaged in the business of lending money to the holders of its policies, which, when they had reached a certain point of maturity, were regarded as furnishing adequate security for loans. The money lending was conducted in the following manner: The policy holders desiring to obtain loans on their policies applied to the company's agent in New Orleans. If the agent thought a loan a desirable one he advised the company of the application by communicating with the home office in New York, and requested that the loan be granted. If the home office approved the loan the company forwarded to the agent a check for the amount, with a note to be signed by the borrower. The agent procured the note to be signed, attached the policy to it, and forwarded both note and policy to the home office in New York. He then delivered to the borrower the amount of the loan. When interest was due upon the notes it was paid to the agent and by him transmitted to the home office. It does not appear whether or not the notes were returned to New Orleans for the endorsement of the payments of interest. When the notes were paid it was to the agent, to whom they were sent

to be delivered back to the makers. At all other times the notes and policies securing them were kept at the home office in New York. The disputed tax was not *eo nomine* on these notes, but was expressed to be on "credits, money loaned, bills receivable," etc., and its amount was ascertained by computing the sum of the face value of all the notes held by the company at the time of the assessment. The tax was assessed under a law, Act 170 of 1898, which provided for a levy of annual taxes on the assessed value of all property situated within the State of Louisiana, and in Section 7 provided as follows:

"That it is the duty of the tax assessors throughout the State to place upon the assessment list all property subject to taxation, including merchandise or stock in trade on hand at the date of listing within their respective districts or parishes. . . . *And provided further*, In assessing mercantile firms the true intent and purpose of this act shall be held to mean the placing of such value upon stock in trade, all cash, whether borrowed or not, money at interest, open accounts, credits, &c., as will represent in their aggregate a fair average on the capital, both cash and credits, employed in the business of the party or parties to be assessed. And this shall apply with equal force to any person or persons representing in this State business interests that may claim domicile elsewhere, the intent and purpose being that no non-resident, either by himself or through any agent, shall transact business here without paying to the State a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from the business done in this State are hereby declared as assessable within this State and at the business domicile of said non-resident, his agent or representative."

The evident purpose of this law is to lay the burden of taxation equally upon those who do business within the State. It requires that in the valuation for the purposes of taxation of the property of mercantile firms the stock, goods and credits shall be taken into account, to the end that the average

capital employed in the business shall be taxed. This metho\
of assessment is applied impartially to the citizens of the
State and to the citizens of other States or countries doing
business, personally or through agents, within the State of
Louisiana. To accomplish this result, the law expressly pro-
vides that "all bills receivable, obligations or credits arising
from the business done in this State shall be assessable at the
business domicile of the resident." Thus it is clear that the
measure of the taxation designed by the law is the fair average
of the capital employed in the business. Cash and credits
and bills receivable are to be taken into account merely because
they represent the capital and are not to be omitted because
their owner happens to have a domicile in another State.
The law was so construed by the Supreme Court of Louisiana,
where, in sustaining the assessment, it was said:

"There can be no doubt that the seventh section of the
act of 1898, quoted in the judgment of the District Court,
announced the policy of the State touching the taxation of
credits and bills of exchange representing an amount of the
property of non-residents equivalent or corresponding to
said bills or credits which was utilized by them in the prosecu-
tion of their business in the State of Louisiana. The evident
object of the statute was to do away with discrimination
theretofore existing in favor of non-residents as against resi-
dents, and place them on an equal footing. The statute was
not arbitrary but a legitimate exercise of legislative power
and discretion."

The tax was levied in obedience to the law of the State,
and the only question here is whether there is anything in
the Constitution of the United States which forbids it. The
answer to that question depends upon whether the property
taxed was within the territorial jurisdiction of the State.
Property situated without that jurisdiction is beyond the
State's taxing power, and the exaction of a tax upon it is in
violation of the Fourteenth Amendment to the Constitution.
*Louisville Ferry Co.* v. *Kentucky*, 188 U. S. 385; *Delaware &c.*

*Railroad Co.* v. *Pennsylvania*, 198 U. S. 341; *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194. But personal property may be taxed in its permanent abiding place, although the domicile of the owner is elsewhere. It is usually easy to determine the taxable situs of tangible personal property. But where personal property is intangible, and consists, as in this case, of credits reduced to the concrete form of promissory notes, the inquiry is complicated, not only by the fiction that the domicile of personal property follows that of its owner, but also by the doctrine, based upon historical reasons, that where debts have assumed the form of bonds or other specialties, they are regarded for some purposes as being the property itself, and not the mere representative of it, and may have a taxable situs of their own. How far promissory notes are assimilated to specialties in respect of this doctrine, need not now be considered.

The question in this case is controlled by the authority of the previous decisions of this court. Taxes under this law of Louisiana have been twice considered here, and assessments upon credits arising out of investments in the State have been sustained. A tax on credits evidenced by notes secured by mortgages was sustained where the owner, a non-resident who had inherited them, left them in Louisiana in the possession of an agent, who collected the principal and interest as they became due. *New Orleans* v. *Stempel*, 175 U. S. 309. Again, it was held that where a foreign banking company did business in New Orleans, and through an agent lent money which was evidenced by checks drawn upon the agent, treated as overdrafts and secured by collateral, the checks and collateral remaining in the hands of the agent until the transactions were closed, the credits thus evidenced were taxable in Louisiana. *Board of Assessors* v. *Comptoir National*, 191 U. S. 388. In both of these cases the written evidences of the credits were continuously present in the State, and their presence was clearly the dominant factor in the decisions. Here the notes, though present in the State at all times when

they were needed, were not continuously present, and during
the greater part of their lifetime were absent and at their
owner's domicile. Between these two decisions came the
case of *Bristol* v. *Washington County*, 177 U. S. 133. It ap-
peared in that case that a resident of New York was engaged
through an agent in the business of lending money in Minnesota,
secured by mortgages on real property. The notes were made
to the order of the non-resident, though payable in Minnesota,
and the mortgages ran to her. The agent made the loans,
took and kept the notes and securities, collected the interest
and received payment. The property thus invested continued
to be taxed without protest in Minnesota, until finally the
course of business was changed by sending the notes to the
domicile of the owner in New York, where they were kept by
her. The mortgages were, however, retained by the agent
in Minnesota, though his power to discharge them was re-
voked. The interest was paid to the agent and the notes
forwarded to him for collection when due. Taxes levied after
this change in the business were in dispute in the case. In
delivering the opinion of the court, Mr. Chief Justice Fuller
said: "Nevertheless, the business of loaning money through
the agency in Minnesota was continued during all these years,
just as it had been carried on before, and we agree with the
Circuit Court that the fact that the notes were sent to Mrs. Bris-
tol in New York, and the fact of the revocation of the power
of attorney, did not exempt these investments from taxation
under the statutes as expounded in the decisions to which we
have referred. . . ."

Referring to the case of *New Orleans* v. *Stempel*, the Chief
Justice said:

"There the moneys, notes and evidences of credits were in
fact in Louisiana, though their owners resided elsewhere.
Still, under the circumstances of the case before us, we think,
as we have said, that the mere sending of the notes to New
York and the revocation of the power of attorney did not take
these investments out of the rule.

"Persons are not permitted to avail themselves, for their own benefit, of the laws of a State in the conduct of business within its limits, and then to escape their due contribution to the public need, through action of this sort, whether taken for convenience or by design."

Accordingly it was held that the tax was not forbidden by the Federal Constitution.

In this case, the controlling consideration was the presence in the State of the capital employed in the business of lending money, and the fact that the notes were not continuously present was regarded as immaterial. It is impossible to distinguish the case now before us from the *Bristol case.* Here the loans were negotiated, the notes signed, the security taken, the interest collected, and the debts paid within the State. The notes and securities were in Louisiana whenever the business exigencies required them to be there. Their removal with the intent that they shall return whenever needed, their long continued though not permanent absence, cannot have the effect of releasing them as the representatives of investments in business in the State from its taxing power. The law may well regard the place of their origin, to which they intend to return, as their true home, and leave out of account temporary absences, however long continued. Moreover, neither the fiction that personal property follows the domicile of its owner, nor the doctrine that credits evidenced by bonds or notes may have the situs of the latter, can be allowed to obscure the truth. *Blackstone* v. *Miller,* 188 U. S. 189. We are not dealing here merely with a single credit or a series of separate credits, but with a business. The insurance company chose to enter into the business of lending money within the State of Louisiana, and employed a local agent to conduct that business. It was conducted under the laws of the State. The State undertook to tax the capital employed in the business precisely as it taxed the capital of its own citizens in like situation. For the purpose of arriving at the amount of capital actually employed, it caused the credits arising

out of the business to be assessed.  We think the State had the power to do this, and that the foreigner doing business cannot escape taxation upon his capital by removing temporarily from the State evidences of credits in the form of notes.  Under such circumstances, they have a taxable situs in the State of their origin.

The judgment of the Supreme Court of Louisiana is

*Affirmed.*