## WHEELER *v.* SOHMER, COMPTROLLER OF THE STATE OF NEW YORK.

### ERROR TO THE SURROGATES' COURT OF NEW YORK COUNTY, STATE OF NEW YORK.

No. 45. Argued November 5, 6, 1913.—Decided April 20, 1914.

The provision in the New York Inheritance Tax Statute, imposing a transfer tax on property within the State belonging to a non-resident at the time of his death, is not unconstitutional under the due process clause of the Fourteenth Amendment as applied to promissory notes the makers of which are non-residents of that State. *Buck* v. *Beach*, 206 U. S. 392, distinguished.

202 N. Y. 550, affirmed.

THE facts, which involve the power of a State to tax promissory notes located in the State although neither the owner nor the maker are residents thereof, are stated in the opinion.

*Mr. Charles P. Howland* for plaintiffs in error:

The taxation of the full value of the debts represented by these promissory notes deprived the executors and beneficiaries of the estate of their property without due process of law, and was in contravention of the Fourteenth Amendment.

Jurisdiction of a State for purposes of transfer or in-

heritance taxation is limited to property within the State, in the senses in which that phrase has been recognized. *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395.

Promissory notes are only evidences of debt and not the debts themselves. Their situs, therefore, is not the situs of the debts; the situs of the debts is at the residence of one or the other of the parties to the relation. *Buck* v. *Beach,* 206 U. S. 392; *Pelham* v. *Way,* 15 Wall. 196.

As to the distinction between a debt and the evidence establishing it, see *Wyman* v. *Halstead,* 109 U. S. 654; *Attorney General* v. *Bouwens,* 4 M. & W. 171, 191; *Hunter* v. *Supervisors,* 33 Iowa, 376; Hanson's Death Duties (4th ed.), p. 239.

A note is the representative of a debt as a warehouse receipt is the representative of personal property, but such a receipt cannot be taxed at the value of the goods on the theory that in some way it represents them. *Selliger* v. *Kentucky,* 213 U. S. 200.

The special factors which warrant inheritance taxation upon choses in action belonging to the estates of non-resident decedents—control over the person of the debtor or over the means of enforcement of the obligation—do not exist here. *Blackstone* v. *Miller,* 188 U. S. 189 (semble).

In the case of choses in action the State of the owner's domicile levies one tax, *Matter of Swift,* 137 N. Y. 77, while the State of the debtor's domicile levies a tax "not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor"—in other words, because it grants a practical privilege by providing means for the collection of the debt. *Blackstone* v. *Miller,* 188 U. S. 189; *Matter of Houdayer,* 150 N. Y. 37.

In this case the State of the decedent had no control over the persons of the debtors. That control was in the States of the debtors, *Buck* v. *Beach,* 206 U. S. 392, 407; *Chicago, R. I. & P. R'y* v. *Sturm,* 174 U. S. 710, 715, and

as neither the universal succession nor the control over the means of enforcement was granted or could be regulated by the former State, that State had no power to tax.

The situs of bonds appears to determine the situs of the debts they symbolize, but bonds have always been sharply distinguished from promissory notes in that regard.

For certain purposes bonds have a peculiar recognition in the common law, and for purposes of taxation, annual or inheritance, are often treated as having a situs dependent upon their physical whereabouts. *Matter of Bronson,* 150 N. Y. 1; *Matter of Fearing,* 200 N. Y. 340; *State Tax on Foreign Held Bonds,* 15 Wall. 300.

But the rule does not embrace promissory notes. *Buck* v. *Beach,* 206 U. S. 392, 403.

This distinction between bonds and promissory notes has a historical basis. *Selliger* v. *Kentucky,* 213 U. S. 200, 204.

A promissory note may be the subject of larceny. *People* v. *Ogdensburgh,* 48 N. Y. 390, 397; *Buck* v. *Beach,* 206 U. S. 407.

At common law a promissory note was not within the law of larceny, *Regina* v. *Watts,* 6 Cox, C. C. 304, but certificates of stock, warehouse receipts and policies of insurance are unquestionably the subjects of larceny (Penal Law of New York, 1909, c. 88), although none of them is the property whose situs determines the power of annual or of inheritance taxation. *Matter of James,* 144 N. Y. 6; *Selliger* v. *Kentucky,* 213 U. S. 200; *Matter of Horn,* 39 Misc. (N. Y.) 133.

Taxation rests upon protection as a correlative, and when no protection is either practically or theoretically possible, taxation should not be laid: this is the broad basis for the rules limiting taxation. *Union Transit Co.* v. *Kentucky,* 199 U. S. 194; *Matter of Bronson,* 150 N. Y. 1; Cooley on Taxation (3d ed.), p. 3.

In this case the State of testator's domicile may tax, and indeed does so (Public Laws of Connecticut, 1903, c. 63), because it protects the universal succession.

The States of the debtors may tax, because they protect the debts by affording recourse to their respective courts. *Matter of Daly*, 100 App. Div. (N. Y.) 373; *S. C.*, 182 N. Y. 524; *Matter of Clinch*, 180 N. Y. 300.

But New York has protected nothing.

If such taxation is allowed, triple taxation on many kinds of choses in action is possible; in the case of a bill of exchange issued in multiplicate, the domiciliary States of the owner and of the primary obligor would be able to tax, and also each State within which one of the multiplicate bills happened to be found at the owner's death.

*Mr. William Law Stout* for defendant in error.

MR. JUSTICE HOLMES delivered the judgment of the court.

This proceeding began with a petition by an executor, acting under ancillary letters, for the appointment of an appraiser to determine the amount, if any, of the transfer tax due from the estate of the deceased testator, Charles C. Tiffany. Tiffany was not a resident of New York at the time of his death but left in a safe deposit box in New York four promissory notes made by Pottinger, a resident of Chicago, secured by mortgages of Chicago land to Illinois trustees, and promissory notes of the Southern Railway Company, a Virginia corporation. The appraiser held these notes taxable under the New York laws of 1905, c. 368, § 1, amending § 220 of an earlier law and imposing a tax "when the transfer is by will or intestate law, of property within the State, and the decedent was a non-resident of the State at the time of his death." The Sur-

rogate confirmed the appraiser's report, and his order was affirmed by the Appellate Division and the Court of Appeals. 143 App. Div. 327. 202 N. Y. 550. The Executors contend that the tax deprives them of their property without due process of law.

In support of this position it was argued that if bonds were subject to taxation simply because of their presence within the jurisdiction it was due to the survival of primitive notions that identified the obligations with the parchment or paper upon which they were written, that bills and notes had a different history, and that there was no ground for extending the conceptions of the infancy of the race to them. It was pointed out that the power to tax simple contracts depends upon power over the person of one of the parties and does not attach to documentary evidence of such contracts that may happen to be within the jurisdiction. Cases were cited in which this court has pronounced bills and notes to be only evidences of the simple contracts that they express, *Pelham* v. *Way*, 15 Wall. 196; *Wyman* v. *Halstead*, 109 U. S. 654, 656, and the precise issue was thought to be disposed of by *Buck* v. *Beach*, 206 U. S. 392. We shall discuss this case, but for the moment it is enough to say that for the purposes of argument we assume that bills and notes stand as mere evidences at common law.

But we are bound by the construction given to the New York statutes by the New York courts, and the question is whether a statute that we must read as purporting to give to bills and notes within the State the same standing as bonds for purposes of taxation, goes beyond the constitutional power of the State. Again for the purposes of argument we may assume that there are limits to this kind of power; that the presence of a deed would not warrant a tax measured by the value of the real estate that it had conveyed, or even that a memorandum of a contract required by the statute of frauds would not sup-

port a tax on the value of the contract because it happened
to be found in the testator's New York strong box.   But
it is plain that bills and notes, whatever they may be
called, come very near to identification with the contract
that they embody.   An indorsement of the paper carries
the contract to the endorsee.·  An ʼindorsement in blank
passes the debt from hand to hand so that whoever has
·the paper has the debt.   It is true that in some cases there
may be à recovery without producing and surrendering
the paper, but so may there be upon a bond in modern
times.   It is not primitive tradition alone that gives their
peculiarities to bonds, but a tradition laid hold of, modi-
fied and adapted to the ·convenience and understanding of
business men.   The same convenience and understanding
apply to bills and notes, as no one would doubt in the case
of bank notes, which technically do not differ from others.
It would be an extraordinary deduction from the Four-
teenth Amendment to deny the power of a State to adopt
the usages and views of business men in a statute on the
ground that it was depriving them of their property with-
out due process of law.   The ʼnecessity of caution in cutting
down the power of taxation on the strength of the Four-
teenth Amendment often has been adverted to.   *Louisville
& Nashville R. R. Co.* v. *Barber Asphalt Paving Co.,* 197
U. S. 430, 434.   Unless we are bound by authority, we
think the statute, so far as we now are concerned with it,
plainly within the power of the State to pass.

As to authority, it has been asserted or implied again
and again that the States had the power to deal with
negotiable paper on the footing of *situs.*   "It is well settled
that bank bills and municipal bonds are in such a concrete
tangible form that they are subject to taxation where
found, irrespective of the domicil of the owner;  . . .
Notes and mortgages are of the same nature  . . .  we
see no reason why a State may not declare that if found
within its limits they shall be subject to taxation."   *New*

*Orleans* v. *Stempel*, 175 U. S. 309, 322, 323. *Bristol* v. *Washington County*, 177 U. S. 133, 141. *State Board of Assessors* v. *Comptoir National d'Escompte*, 191 U. S. 388, 403, 404. *Metropolitan Life Insurance Co.* v. *New Orleans*, 205 U. S. 395, 400, 402. This is the established law unless it has been overthrown by the decision in *Buck* v. *Beach*, 206 U. S. 392.

No such effect should be attributed to. that case. The Ohio notes in Buck's hands that were held not to be taxable in Indiana were moved backward and forward between Ohio and Indiana with the intent to avoid taxation in either State. 206 U. S. 402. They really were in Ohio hands for business purposes, *ibid.*, 395, and sending them to Indiana was spoken of by Mr. Justice Peckham as improper and unjustifiable. *Ibid.* 402. Their absence from Ohio evidently was regarded as a temporary absence from home. *Ibid.* 404. And the conclusion is carefully limited to a refusal to hold the presence of the notes "under the circumstances already stated" to amount to the presence of property within the State. A distinction was taken between the presence sufficient for a succession tax like that in this case, and that required for a property tax such as then was before the court, and the only point decided was that the notes had no such presence in Indiana as to warrant a property tax. See *New York Central & Hudson River R. R. Co.* v. *Miller*, 202 U. S. 584, 597. If *Buck* v. *Beach* is not to be distinguished on one of the foregoing grounds, as some of us think that it can be, we are of opinion that it must yield to the current of authorities to which we have referred.

In the case at bar it must be taken that the safe deposit box in which the notes were found was their permanent resting place and therefore that the power of the State so repeatedly asserted in our decisions could come into play.

*Judgment affirmed.*

Mr. Justice McKenna, concurring.

I concur in the result, but cannot concur in the reasoning of the opinion, or rather its controlling proposition unmodified. I might pass it by in silence if it did not have larger consequence than the decision of the pending case. The opinion is rested on the proposition, said to be based on authority, that the States have power to deal "with negotiable paper on the footing of situs," that is, to regard such paper so far concrete and tangible as to be of itself a subject of taxation, irrespective of the domicile of its owner or, I add, the locality of the debt which it represents. For the proposition announced, Mr. Justice Brewer, in *New Orleans* v. *Stempel,* 175 U. S. 309, is quoted from. Other cases are cited and it is said to be established law unless it has been overthrown by the decision in *Buck* v. *Beach,* 206 U. S. 392. I refrain from meeting the judgment of my brethren by simply opposing assertion, and I feel constrained to review the cases, including *Buck* v. *Beach.* I will do so in the order of their decision.

Commencing with the *Stempel Case* I may immediately say of it that its facts did not call for the broad and general declaration it is adduced to sustain. The statute passed on did not attempt to tax negotiable paper simply because of its presence in the State. It regarded the origin and use of such paper and declared its (the statute's) purpose to be that no non-resident, by himself or through an agent, should transact business in the State "without paying to the State a corresponding tax with that exacted of its own citizens," and, to execute the purpose, declared: "All bills receivable, obligations or credits arising from the business done in this State are hereby declared assessable within this State, and at the business domicil of said non-resident, his agent or representative."

The property assessed was inherited by Stempel's wards, they and she being residents of the State of New York. It

was assessed to the estate of the grandfather of the wards, and was $15,000, "money in possession, on deposit, or in hand," and 800,000, "money loaned or advanced, or for goods sold; and all credits of any and every description." The contention was that "the situs of the loans and credits was in New York, the place of residence of the guardian and wards, and, therefore, being loans and credits without the State of Louisiana, they were not subject to taxation therein."

The question presented by the contention, this court said, was whether, under the statute as interpreted by the Supreme Court of the State, the properties were subject to taxation, and, if so subject, whether any rights secured by the Federal Constitution were thereby infringed. The tax was sustained, but it will be observed that negotiable paper was not assessed at all or dealt with as an entity separate from what it represented. The notes which represented the credits taxed were, it is true, in New Orleans, but in possession of the agent of Stempel. Not they, but the rights of which they were the evidence were taxed. The broad declaration, therefore, that negotiable paper had such tangibility as to be of itself a taxable entity was not called for. The true value of the case and its application to the case at bar can be estimated when we consider the other cases.

In *Bristol* v. *Washington County*, 177 U. S. 133, notes secured by mortgages in the State (Minnesota) were taxed. The question was of their situs. The state court put its decision on the ground that the notes were in the State for collection or renewal with a view of reloaning the money and keeping it invested as a permanent business. And this court in its decision said that "credits secured by mortgages, the result of the business of investing and reinvesting moneys in the State, were subject to taxation as having their situs there." The ruling was affirmed. We said, by Mr. Chief Justice Fuller: "Persons are not per-

mitted to avail themselves for their own benefit of the laws of a State in the conduct of business within its limits, and then to escape their due contribution to the public needs through action of this sort, whether taken for convenience or by design" (p. 144).

In *Board of Assessors* v. *Comptoir National d'Escompte*, 191 U. S. 388, credits in the form of checks were taxed under the same statute considered in the *Stempel Case*. They were held in the State for investment and reinvestment, and this was the basis of the decision. The checks, it was said, became a credit for money loaned, localized in Louisiana, protected by it and within the scope of its taxing laws as construed by the Supreme Court. And we further said, after reviewing the *Stempel Case* and the *Bristol Case:* "From these cases it may be taken as the settled law of this court that there is no inhibition in the Federal Constitution against the right of the State to tax property in the shape of credits where the same are evidenced by notes or obligations held within the State, in the hands of an agent of the owner for the purpose of collection or renewal, with a view to new loans and carrying on such transactions as a permanent business" (p. 403).

In *Metropolitan Life Insurance Co.* v. *New Orleans*, 205 U. S. 395, the assessment was also under the act passed on in the *Stempel Case*. I will not pause to detail the facts. It is enough to say that the credits taxed were loans (evidenced by notes) by the insurance company to its policy holders in Louisiana. The tax was not *eo nomine* on the notes but was expressed to be on "credits, money loaned, bills receivable," etc., and its amount was ascertained by computing the sum of the face value of all the notes held by the company at the time of the assessment.

The purpose of the taxing law was said to be to lay the burden of taxation equally upon those who do business within the State. And, after comment, it was said (p. 399): "Thus it is clear that the measure of the taxation

designed by the law is the fair average of the capital employed in the business." In other words, the investments in the State were taxed and the legality of the tax was determined by their situs, not by the locality of the notes which represented them, *the notes being in New York at the home of the insurance company.*

It was the situs of the debt which determined the legality of the taxation in all of the cases and united them under the principle expressed in *Metropolitan Life Insurance Co.* v. *New Orleans,* that the law regards the place of the origin of negotiable paper as its true home, to which it will return to be paid, and its temporary absence can be left out of account. They do not support the broad proposition that to negotiable paper can be ascribed such tangibility and entity as so to make it a taxable object of itself in a jurisdiction other than that of the obligation it represents. This broad generality is necessary to sustain the tax in the present case if it can be regarded a direct tax on property, for Illinois, not New York, is the situs of the debts of which the notes taxed are the evidence, and of the mortgages which secure them.

That broad proposition was asserted in *Buck* v. *Beach* and rejected. The notes involved had their origin in Ohio and represented investments in that State. Their owner died, and one of the two trustees of his will resided in Indiana. The notes were kept in the custody of the latter except that at the time of assessment of taxes in that State they were sent to Ohio and after the lapse of a few days returned to him. They were taxed in Indiana. The tax was sustained by the State Supreme Court but declared invalid by this court.

The proposition presented for decision was stated thus by Mr. Justice Peckham for the court: "The sole question then for this court is whether the mere presence of the notes in Indiana [the taxing State] constituted the debts **of** which the notes were the written evidence, property

within the jurisdiction of that State, so that such debts could be therein taxed" (p. 400). The prior cases were considered, and it was said: "There are no cases in this court where an assessment such as the one before us has been involved. *We have not had a case where neither the party assessed nor the debtor was a resident of or present in the State where the tax was imposed, and where no business was done therein by the owner of the notes or his agent relating in any way to the capital evidenced by the notes assessed for taxation.* We cannot assent to the doctrine that the mere presence of evidences of debt, such as these notes, under the circumstances already stated, amounts to the presence of property within the State" (p. 406). And it was pointed out that the prior cases, which were specifically reviewed, gave no support to the rejected doctrine. It was not overlooked that certain specialty debts, state and municipal bonds and circulating notes of banking institutions, have sometimes been treated as property where they were found though removed from the domicile of the owner, and *State Tax on Foreign-held Bonds*, 15 Wall. 300, 324, was cited. Promissory notes were held not to be within the rule.

It is, however, asserted that the circumstances of the case showed that the notes were fugitives from taxation, alternately from Indiana and Ohio, and that their stay in Indiana was in evasion of their obligations to Ohio and was "a transit, although prolonged." But the bad motive of the possessor of the notes was not made a ground of decision. If the court felt a retributive impulse to deny the notes sanctuary in Indiana it was suppressed. The court declared that the motive for sending the notes to Indiana was of no consequence and that the attempt to escape proper taxation in Ohio did not confer jurisdiction on Indiana to tax them (p. 402).

But we are not required to overrule *Buck* v. *Beach* nor make it yield in any particular in order to sustain the

tax in the case at bar. It, in effect, reserved from its principle inheritance or succession taxing acts by rejecting as not in point cases which involved them. We said, "The foundation upon which such acts rest is different from that which exists where the assessment is levied upon property. The succession or inheritance tax is not a tax on property, as has been frequently held by this court, *Knowlton* v. *Moore*, 178 U. S. 41, and *Blackstone* v. *Miller*, 188 U. S. 189, and therefore the decisions arising under such inheritance tax cases are not in point" (p. 408).

The tax under review is of that kind. In other words, it is not a tax on property, but a tax upon the transfer of the property by the will of the testator of plaintiffs in error as provided by the laws of the State. The will was probated in Connecticut, where the deceased was a resident, but ancillary letters of administration were issued to plaintiffs in error by the Surrogates' Court, County of New York, State of New York, and the taxed notes were part of the property disposed of by his will. It appears, therefore, that the property is in the control of the courts of New York. In other words, the laws of New York are invoked, accomplish its transfer and subject it to the dispositions of the will and make effectual the purposes of the testator. *Blackstone* v. *Miller*, *supra*.

I am dealing with the power of taxation under our decisions. If there be injustice in its exercise by measuring the tax by the value of the credits represented by the notes, it is an injustice which this court cannot redress.

I am authorized to say that MR. JUSTICE PITNEY concurs in this opinion.

MR. JUSTICE LAMAR, dissenting.

I concur in Mr. Justice McKenna's analysis of *Buck* v. *Beach* and the other cases, but am of the opinion that the principle there decided, applies as well to inheritance and

transfer taxes on notes as to direct taxes and that, therefore, the judgment in the present case should be reversed.

I am authorized to say that THE CHIEF JUSTICE and MR. JUSTICE VAN DEVANTER concur in this dissent.