**SMITH v. UNITY INDUSTRIAL LIFE
INS. CO., Inc.***

No. 16949.

Court of Appeal of Louisiana.   Orleans.
Oct. 17, 1938.

*Rehearing denied 184 So. 368.

Charles J. Mundy, of New Orleans, for appellant.

Frank S. Normann ·and Harold M. Rouchell, both of New Orleans, for appellee.

McCALEB, Judge.

On March 1, 1922, Clement Smith caused the defendant to issue to him a policy of industrial life insurance in the sum of $400 in which he designated his wife, Charlotte Dent Smith, the appellant, as beneficiary. The premiums on said policy were paid from the date of its issuance through March 31, 1933, when they were discontinued and the policy was accordingly lapsed. In conformity with the provisions of the laws of this State, viz.: Act No. 193 of 1906 as amended by Act No. 57 of 1932, the policy of insurance provided for the accumulation of a reserve which became effective after it had been in existence for three years. On January 20, 1928, while the policy was in force, the insured borrowed the sum of $15.60 on account of this accumulated reserve and surrendered the policy to the defendant as collateral security for the repayment of the loan. Again on February 3, 1931, Smith borrowed on account of said reserve the sum of $26 and, simultaneously with the making of this second loan, paid the first loan of $15.60 so that, at the time the policy lapsed for nonpayment of premiums, he was indebted to the defendant in the sum of $26. The assured died on February 4, 1937.

The plaintiff has instituted this suit as beneficiary upon said policy claiming that, when the policy lapsed for nonpayment of premiums on March 31, 1933, the reserve, which had accumulated during the 11 years prior to the lapse, was more than sufficient to extend the coverage of the policy to the · date of insured's death in 1937.

The defense to the action is that the net reserve of the policy amounts to approximately $8 and that this was insufficient to extend the period of insurance from the date of the lapse to the date of the insured's death. It is defendant's contention that, while, under a schedule of values inserted in the policy, the gross reserve was $38, in computing the amount, under the applicable law of this State, which should be used as a net reserve for extended insurance, there is to be deducted from the gross reserve the amount of the insured's indebtedness to the company with accrued interest amounting to a total of $29.21 thereby leaving a balance or a net reserve of only $8.79. It is further submitted that the sum of $8.79 is sufficient to carry the policy on extended insurance for only 2 years and 75 days, whereas the insured died 3 years, 10 months and 3 days from the date of the lapse.

Plaintiff, on the other hand, asserts that, under the provisions of Act 193 of 1906, as amended, the insurance company is without right, in computing the amount of reserve available for extended insurance, to deduct the insured's indebtedness to the company and that this indebtedness can only be subtracted from the face of the policy after adding thereto the outstanding dividend additions.

While there are other questions involved in this matter, which we shall later discuss, we address our attention, at the outset, to the main proposition of law in contest hereinabove stated, which involves a judicial interpretation of the provisions of Act No. 193 of 1906, as amended. This statute, which controls the result to be reached, reads as follows: "No policy of life or endowment insurance (other than a term policy for twenty years or less) issued by any legal reserve life insurance company on or after January first, nineteen hundred and seven, after being in force three full years shall by its terms lapse or become forfeited by the non-payment of any premium, or of any note therefor, or of any loan on such policy, or of any interest on such note or loan. The reserve on such policy computed according to the standard adopted by said company, together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company, and after deducting one-fifth of the said entire reserve or the sum of two and fifty one-hundredths dollars for each one hundred dollars of the face of said policy, if said sum shall be more than the said one-fifth, shall upon demand, with surrender of the policy, be applied as a surrender value as agreed upon in the policy; provided that, if no other option expressed in the policy be availed of by the owner thereof, the same, without any further act on the part of the owner of the policy, shall be applied either to pur-

chase upon the same life, at the attained age, paid-up insurance, payable at the same time, and under the same conditions, except as to the payment of premiums, as the original policy, or to continue the insurance in force at its full amount, including any outstanding dividend additions, less any outstanding indebtedness on the policy, so long as such surrender value will purchase non-participating temporary insurance at net single premium rates by the standard adopted by the company, at the age of the insured at the time of lapse or forfeiture, provided that, in case of any endowment policy, if the sum applicable to the purchase of temporary insurance be more than sufficient to continue the insurance to the end of the endowment term named in the policy, the excess shall be used to purchase, in the same manner, pure endowment insurance, payable at the end of the endowment term named in the policy on the conditions on which the original policy was issued; and provided, further, that any attempted waiver of the provisions of this paragraph in any application, policy or otherwise, shall be void, and that any value allowed in lieu thereof shall be at least equal to the net value of temporary insurance or of the temporary and pure endowment insurance herein provided for. The term of temporary insurance herein provided for shall include the period of grace, if any."

■ Because of the many provisions set forth in the foregoing, it is necessary, in order that an intelligent discussion of the points here involved may be portrayed, to consider the parts of the law which deal with its operation in case a policy lapses for nonpayment of premiums after it has been in force for a period of three years and has accumulated a legal reserve. In such event, three options may be exercised by the insured, i. e.—he may take the surrender value; he may obtain paid up insurance in such amount as the net reserve will purchase; or he may have the policy continued in full force on extended insurance. And it is well settled that, in case he fails to avail himself of any of the options granted to him, the policy is automatically extended for so long a time as the accumulated reserve will pay for on the premium rate basis of the company. See Watson v. Metropolitan Life Ins. Co., 183 La. 25, 162 So. 790. In the case at bar, it is conceded that the insured, not having exercised any of the options afforded

him by the statute, was entitled to extended insurance and plaintiff maintains that, where the reserve is used for the purpose of extending the policy, an indebtedness of the insured to the company may not be deducted in computing the net reserve available for such extension.

The portion of the statute, with reference to the computation of the reserve, states: "The reserve on such policy computed according to the standard adopted by said company, together with the value of any dividend additions upon said policy, *after deducting any indebtedness to the company,* and after deducting one-fifth of the said entire reserve or the sum of two and fifty one-hundredths dollars for each one hundred dollars of the face of said policy, if said sum shall be more than the said one-fifth, shall upon demand, with surrender of the policy, be applied as a surrender value as agreed upon in the policy." (Italics ours.)

It is well to pause at this moment to observe that the language of the Legislature with respect to surrender value is explicit and that the insurer is entitled to deduct any indebtedness to the company in computing the net amount due the policyholder upon a surrender of the policy.

The statute continues: "provided that, if no other option expressed in the policy be availed of by the owner thereof, *the same,* without any further act on the part of the owner of the policy, shall be applied. * * * to continue the insurance in force at its full amount, *including any outstanding dividend additions, less any outstanding indebtedness on the policy,* so long as *such surrender value* will purchase non-participating temporary insurance at net single premium rates by the standard adopted by the company, at the age of the insured at the time of lapse or forfeiture * * *." (Italics ours.)

It is the plaintiff's contention that the words "the same", hereinabove italicized, refer to the gross reserve on the policy and not to the surrender value and that, in cases where the policy is automatically placed on extended insurance, the indebtedness to the company is not deductible from the gross reserve but that such indebtedness is chargeable only against the full amount of the insurance.

We are unable to agree with plaintiff's interpretation of the statute. When a policyholder borrows on his policy, he mere-

ly receives a portion of the reserve which has been accumulated, by the payment of premiums, toward the ultimate amount which the insurance company must pay in the event of death. In fact, the so-called loan to the policyholder, who has an accumulated reserve, is not an "obligation or debt" on the part of the insured within the true sense of the word. This "loan" is no more than a withdrawal by the insured of money belonging to him which has accumulated in the hands of the insurance company during the course or term for which the policy has been in existence. Such is the view of the Supreme Court of the United States as expressed in the case of Board of Assessors of the Parish of Orleans v. New York Life Ins. Co., 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597. There, the insurance company sought an injunction in the federal court against the City of New Orleans to prevent it from collecting a tax upon the loans made by the insurance company to its Louisiana policyholders, contending that these so-called loans were not to be included in its assets for purposes of taxation. The court, through Mr. Justice Holmes, in affirming the judgment of the district court, which granted the insurance company the relief prayed for, observed [page 386]: "This is called a loan. It is represented by what is called a note, which contains a promise to pay the money. But as the plaintiff never advances more than it already is absolutely bound for under the policy, it has no interest in creating a personal liability, and therefore the contract on the face of the note goes on to provide that if the note is not paid when due, it shall be extinguished automatically by the counter credit for what we have called the reserve value of the policy. In short, the claim of the policyholder on the one side and of the company on the other are brought into an account current by the very act that creates the latter. The so-called liability of the policyholder never exists as a personal liability, it never is a debt, but is merely a deduction in account from the sum that the plaintiffs ultimately must pay. In settling that account, interest will be computed on the item for the reason that we have mentioned; but the item never could be sued for, any more than any other single item of a mutual account that always shows a balance against the would-be plaintiff. In form it subsists as an item until the settlement, because interest must be charged on it. In substance it is extinct from the be-

ginning, because, as was said by the judge below, it is a payment, not a loan. A collateral illustration of the principle will be found in Starratt v. Mullen, 148 Mass. 570, 20 N.E. 178, 2 L.R.A. 697, and cases there cited."

See, also, Williams v. Union Central Life Ins. Co., 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693, citing the quoted case with approval. Compare Metropolitan Life Ins. Co. of New York v. City of New Orleans, 205 U.S. 395, 27 S.Ct. 499, 51 L.Ed. 853.

It is certain, however, that our Legislature, in the passage of Act 193 of 1906, had in mind that "loans" made by insurance companies to its policyholders constituted an "indebtedness" to the company for it provided that any indebtedness to the company is deductible in the computation of the net reserve to be applied as the surrender value of the policy and it also declared that, in case of lapse, the reserve shall be used to continue the policy in force at its full amount including any dividend additions and subtracting therefrom "any outstanding indebtedness" on the policy.

The difficulty with plaintiff's argument in this case is that she misconceives the true meaning of the legal reserve of a policy of insurance. The Supreme Court of the United States, in Williams v. Union Central Life Ins. Co., 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693, has defined the reserve of an insurance policy in the following language [page 350]: "Where level premiums are paid, the amount of the annual premium is necessarily greater than the mortality cost during the early years of the insurance and less than the mortality cost in later years. With the mortality table and an assumed rate of interest on the investment of premiums received, the amount of the accumulated savings on this basis, at any date, can be mathematically computed. This amount constitutes the 'reserve' against the policy or its net value. The insurer must have on hand the aggregate amount of these reserves against its outstanding policies. And in case of lapse, after a policy has been in force for a specified time, its net value or 'surrender value,' less surrender charges, is made available to the policyholder."

In cases where "loans" are granted to policyholders, such advances have merely the effect of reducing the amount of ac-

cumulated money available which ultimately will be used to pay the policy of insurance and in the event the loan is not repaid prior to the maturity of the policy, it will be subtracted from the proceeds of the insurance. To illustrate—"A" is the owner of a policy on his life in the sum of $10,000 on which he has been paying regular premiums for a number of years. Let us say that, at the end of the tenth year, this policy has accumulated a reserve of $1,000. If "A" dies while the policy is in full force and effect, he receives from the company the full sum of $10,000. In such instance, the company has on hand only $1,000 which had been accumulated on the policy through the payment of premiums and, by reason of its contract, it is compelled to supply the additional $9,000 in order to pay the face of the policy. Again, suppose that, under the same policy, "A" borrows from the insurance company the sum of $500 against his available reserve of $1,000. The reserve is, in this instance, accordingly reduced to the extent of $500 (the amount of the loan) and there is only available the balance of $500 to pay the insurance. If "A" should die under these circumstances, he is entitled to the sum of $9500 as his $500 withdrawal must be deducted from the face of the policy. Let us suppose again that "A" borrows $500 and then permits the policy to lapse and, instead of applying for the surrender value, does nothing (thereby effecting a continuance of his policy on extended insurance). It seems clear that, under these circumstances, the advance which has been granted to him by the company must be deducted in computing the amount available for extended insurance since he has, in truth, received the sum of $500 as an advance payment on account of the ultimate liability of the company in case of his death. Hence, in computing the available amount to be used as a single net premium to extend the insurance, the reserve would be only $500 and not $1,000 and, further, in the event death should occur while the policy is on extended insurance, the beneficiary would only be entitled to receive from the company the sum of $9,500 because the insured has already obtained, by virtue of the loan, the sum of $500 on his policy.

It may be observed at this point that the insurer is also entitled to interest from the policyholder on the amount of "loans" or withdrawals against the reserve. This is because the insurance company is vested with the possession of the entire reserve during the existence of the contract. Hence, when it permits the assured to have immediate use of this reserve, it is entitled to exact a fair rate of interest for its waiver of its contractual right of possession to the fund. See Board of Assessors v. N. Y. Life Ins. Co., supra.

■ It is also manifest that, when the Legislature, in enacting the statute under discussion, used the words "the same" in expressing the amount to be available for continuing the policy in force on extended insurance, it had in mind the net amount of reserve which would have been payable to the policyholder had he surrendered his policy.

This view is fortified by the following provision that "the same * * * shall be applied * * * to continue the insurance in force at its full amount, including any outstanding dividend additions, less any outstanding indebtedness on the policy, *so long as such surrender value will purchase nonparticipating temporary insurance * * *"* (Italics ours). In other words, in granting the extended insurance, the Legislature permitted the deduction from the face of the policy the amount of the "indebtedness" thereon as this sum had been previously advanced to the insured in the form of a loan and had the effect of reducing the ultimate liability in the event the policy matured. And this "loan" or withdrawal from the accumulated reserve also effectively reduced the amount available, in case of lapse, to be applied to continue the policy in force on extended insurance for "so long as such surrender value will purchase", etc.

■ Counsel for plaintiff, however, insists that such an interpretation of legislative intent permits the insurance company to repay itself twice for the amount of the so-called loan. But this result does not obtain for the reason that the advance withdrawal or "loan" merely reduces the ultimate liability of the company in the event of loss. As we have heretofore stated, the loan is no more than a permissible withdrawal of funds out of the accumulated reserve in advance of whatever settlement is had on the policy. It has the effect of reducing the accumulated reserve which the insurance company would use to pay the loss when it occurs. And in settlement of the policy at maturity, the advances or loans are chargeable against the face of the

policy as payments on account thereof so that the insured will always receive the amount stipulated for in the contract.

The manner in which the statute is intended to operate can be readily demonstrated by employment of the simple illustration which we have above used (assuming that there are no dividend additions to the face value of the policy and leaving out the consideration of interest) as follows:—"A", the owner of a policy of $10,000 on which there is an accumulated reserve of $1,000, "borrows" $500 from the insurance company and permits the policy to lapse. In such case, the law compels the insurance company to apply the net reserve to continue the policy in force on extended insurance. In calculating that amount, the sum of $500 would be subtracted from the gross reserve, leaving a balance of $500 available to be used as a premium for extended insurance. In ascertaining the amount of the policy of extended insurance, the "loan", which is, in truth, a payment on account to the insured, must likewise be deducted from the face of the policy, so that the available net reserve of $500 (surrender value) would be used to continue the net policy liability of $9,500 in force and effect "so long as such surrender value ($500) will purchase nonparticipating temporary insurance at net single premium rates by the standard adopted by the company * * *". By use of this method, it will be seen that if death occurs while the policy is on extended insurance, the insured will receive in settlement the full amount contracted for, i. e. $9,500, the face of the policy and the $500 "loan" or withdrawal which he has already obtained. This cannot be viewed as a double deduction by the insurance company because the insured is receiving, in case of loss, the exact amount the insurer agreed to pay him, viz.: $10,000.

Counsel for plaintiff, in further stressing the point that the insurance company should not be permitted to deduct from the reserve any indebtedness of the insured to the company, relies upon section 4 of the general provisions of the policy, reading as follows: "Any indebtedness to the Association, including any balance of premium for the insurance year remaining unpaid will be deducted in any settlement of this Policy or any benefit thereunder."

It seems plain to us that the foregoing provision neither adds to nor takes away from any of the rights afforded to the insured under the applicable statute. In fact, the stipulation merely states what the law already provides, viz.: That in case of loss any indebtedness of the insured will be deducted from the benefits paid.

Counsel for plaintiff also contends that liability on the policy in suit cannot in any event be avoided because of a certain clause in the policy under the heading Explanation Loans which sets forth that: "Failure to repay such loan or interest thereon shall not void this Policy unless the total indebtedness hereon to the Association shall equal or exceed the loan at the time of such default, nor until thirty days after notice shall have been mailed by the Association to the last known address of the Insured and of the assignees if any."

It is insisted that, the loan on the policy in the instant case being less than the accumulated reserve, the liability under the policy could never be forfeited. We cannot see that this clause has any application to the case at bar because it was not the insured's failure to repay the loan which caused the policy to lapse but his neglect to pay the stipulated monthly premiums provided for in the policy. The stipulation relied on can only have application in cases where the indebtedness to the company is equal to or exceeds the available reserve. Moreover, under the nonforfeiture provisions of Act 193 of 1906, a policy of insurance may not be lapsed or forfeited for the nonpayment of any loan made to the insured under the policy. In Bach v. Western States Life Ins. Co., 51 F.2d 191, the Circuit Court of Appeals of the United States for the Tenth Circuit, in discussing a similar clause in an insurance policy, observed [page 192]: "This clause has no application to the facts in this case, because the policy was not avoided for failure to pay the policy-loan; the policy, in the true sense, was not avoided; the policy provided for certain rights of the insured in event he ceased paying premiums; he did cease paying premiums and he has had his rights. But if we consider the policy as being 'avoided', it was the nonpayment of the premium and not the policy-loan that resulted in the avoidance. The loan was paid by charging it against the reserve. Reading the entire policy, the purpose of this clause is clear. The accruing interest on a policy-loan might equal the reserve value of the policy between premium paying dates. It would be manifestly unfair to

avoid the policy on the date the accruing interest equaled the reserve values without giving notice to the insured. No such situation is here presented."

■ Since we are of the opinion that the insurance company, in computing the amount available to extend coverage under the policy after its lapse, was entitled to deduct the assured's indebtedness, plus interest thereon, from the otherwise available reserve, we finally consider the facts of the case with respect to the amount of money on hand for that purpose. In Turner v. People's Industrial Life Ins. Co., 180 So. 435, we held that the burden is upon the insurer to show that the reserve on the basis actually adopted by it is not sufficient to carry the lapsed policy beyond the date of the death of the insured. The defendant company, in the instant case, fully realizing the effect of the above cited decision, assumed the burden of proof and tendered the evidence of Mr. Grigsby Keetch, an actuary in the employ of the Pan American Life Insurance Company of New Orleans.

Counsel for plaintiff vigorously attacks Mr. Keetch's testimony and tells us that a reading of his statement reveals that the witness does not possess the attainments requisite to recognition as an expert witness. We have scrutinized Mr. Keetch's declaration with care and, while we opine that he most certainly possesses the necessary knowledge to give the court the desired information, his testimony is most indefinite and exhibits that his conclusions are not based upon calculations made in accordance with the provisions of the statute which controls our decision. For instance, in stating the gross accumulated reserve of the policy, he accepts the figure stated in the schedule set forth in the policy under Cash Loan Values. We have no way of knowing that the loan value of the policy is equal to the gross accumulated reserve and Mr. Keetch's statement does not enlighten us on this point.

Moreover, the statute provides that, in computing the surrender value, there is to be added to the accumulated reserve the "value of any dividend additions upon said policy." Mr. Keetch's testimony is utterly silent as to dividend additions. In fact, the witness, in computing the amount available for extended insurance, has merely taken the figure of $38 (which he presumes to be the gross reserve at the time of lapse) and has deducted therefrom the sum of $29.21 (the amount of the insured's indebtedness plus interest). The difference between these figures is $8.79 and this amount he asserts was the available sum for the purchase of extended insurance.

■ Again, Mr. Keetch stated that the surrender value, which he fixes at $8.79, is sufficient to carry the insurance in effect for only 2 years and 75 days. He does not explain that this conclusion was reached by using the net single premium rates "by the standard adopted by the Company, at the age of the insured at the time of lapse or forfeiture," as provided by the Act. The court is entitled to be informed as to what standard was adopted by the company in order that it might be ascertained whether such standard was a fair one and not one which discriminated between policyholders. See Decoy v. First Natl. Life Ins. Co., 184 La. 632, 167 So. 172.

■ On the whole, we find that the evidence of Mr. Keetch is too vague and indefinite to sustain a conclusion that the surrender value of the policy was insufficient to extend the insurance from the date of lapse to the date of the insured's death. On the other hand, plaintiff has not seen fit to contradict the evidence submitted by the defendant and if we permit her to recover, because of the technical insufficiency of defendant's expert evidence, it is entirely possible that a miscarriage of justice might take place. In avoidance of such a consequence and, in order that the truth of the case might be established, we deem it advisable to remand the matter for the hearing of further testimony on the question of the exact amount of the surrender value of this policy and whether such sum was sufficient to extend the insurance from the date of the lapse until the date of the insured's death.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered that this case be remanded to the Civil District Court for the Parish of Orleans for further proceedings according to law and consistent with the views herein expressed. The defendant to pay the cost of this appeal, other costs to await the final determination of the cause.

Reversed and remanded.