Ingram, Respondent, vs. The State and others, Appellants.

*December 2, 1940—January 7, 1941.*

450

454

For the appellants there were briefs by the *Attorney General, Harold H. Persons,* assistant attorney general, and *Neil Conway,* inheritance tax counsel, and oral argument by *Mr. Persons* and *Mr. Conway.*

For the respondent there were briefs by *Ramsdell, King & Linderman* of Eau Claire and *Oppenheimer, Dickson, Hodgson, Brown & Donnelly* of St. Paul, Minnesota, and oral argument by *William H. Oppenheimer* and *George Y. King.*

MARTIN, J. The respondent contends that the state of Wisconsin has no jurisdiction to levy a gift tax on the transfer of the trust property in question. On that issue, the learned trial court held that the state has jurisdiction to levy a tax on gifts of intangible property such as are involved herein. However, the court held that the assessment was unlawful because if any gift was made to respondent by the trust indenture, it could not be a gift of the entire estate and no assessment was made or attempted to be made on the basis of the value of the alleged gift. The court further held that no gift whatever was made. The assessment was made under ch. 363, Laws of 1933, which, so far as here material, provides :

"Section 4. *Emergency Gift Tax.* (1) An emergency tax is imposed upon transfers of property, real, personal or mixed, or any interest therein or income therefrom in trust or otherwise, to any person, association or corporation, which are made subsequent to the effective date of this act and prior to July 1, 1935, in the following cases, except as hereinafter provided :
 "(a) When the transfer is by gift from any person who at the date of such gift was a resident of the state. . . .
 "(2) (a) If the transfer is made in property, the clear market value thereof at the date of the gift shall be considered the taxable value of the gift. . . .
 "(7) (a) It shall be the duty of the tax commission to super-vise the administration of the tax imposed by this chapter, and in the performance of such duty the tax commission and the assessors of incomes shall possess all powers now or hereafter granted to the tax commission and the assessors of incomes in the assessment of personal property and incomes, including the power to estimate the value of transfers. . . .

"(b) On or before the fifteenth day of March the donor and the donee of any transfer during the preceding year made taxable by the provisions of this chapter shall report such transfer to the assessor of incomes of the assessment district in which such donor and such donee file their respective income tax returns. . . .

"(c) The assessor of incomes of the assessment district in which the donee resides shall assess the tax due on such tranfers under this chapter and the tax so assessed shall be paid to the same officer and at the same time as income taxes are paid. . . .

"(e) All provisions of the income tax law not in conflict with the provisions of this section, relating to the assessment of incomes and hearing and appeal thereon, the preparation of assessment and tax rolls, the certification of taxes due, the correction thereof, the collection of income taxes, and the imposition of interest on delinquent income taxes, shall govern the assessment of taxes due under this chapter.

"(f) The word 'transfer' as used in this chapter shall be taken to include the passing of property or any interest therein, in possession or enjoyment, present or future, by grant, deed, bargain, sale or gift in the manner herein prescribed."

In support of its conclusion that the state has jurisdiction to levy a tax on gifts of intangible property, the court relied upon the decisions of the United States supreme court in the following cases: *Bullen v. Wisconsin,* 240 U. S. 625, 36 Sup. Ct. 473, 60 L. Ed. 830; *Blodgett v. Silverman,* 277 U. S. 1, 48 Sup. Ct. 410, 72 L. Ed. 749; *Curry v. McCanless* (1939), 307 U. S. 357, 59 Sup. Ct. 900, 83 L. Ed. 1339, 123 A. L. R. 162; *Pearson v. McGraw,* 308 U. S. 313, 60 Sup. Ct. 211, 84 L. Ed. 293. The trial court's opinion was made prior to the decision of this court in *Van Dyke v. Tax Comm.* (June 4, 1940) 235 Wis. 128, 292 N. W. 313, affirmed by the United States supreme court, October 14, 1940, in — U. S. —, 61 Sup. Ct. 36, 85 L. Ed. —.

Respondent contends that there is a controlling difference in the factual situation in the instant case from that in the case of *Van Dyke v. Tax Comm., supra.* In this connection

respondent argues that in the instant case a large part of the trust estate (bonds) had been without the state for between ten and fifteen years and had acquired a situs in the state of Illinois before it was transferred to Minnesota; that the bonds, the stock certificates, and the note were all taken to Minnesota for the purpose and with the intent that they were to remain there permanently; that they were placed in the physical possession of a Minnesota corporate trustee; and that under the terms of the trust indenture and as an actual fact, the securities have at all times since the creation of the trust remained and are permanently located in Minnesota in the physical possession of the corporate trustee. The general rule is that intangible personal property has its situs for the purpose of taxation in the jurisdiction of the domicile of the owner, though intangibles may acquire an actual situs in a jurisdiction other than that of their owner. *Metropolitan L. Ins. Co. v. New Orleans,* 205 U. S. 395, 27 Sup. Ct. 499, 51 L. Ed. 853; *Wheeling Steel Corp. v. Fox,* 298 U. S. 193, 56 Sup. Ct. 773, 80 L. Ed. 1143; *First Bank Stock Corp. v. Minnesota,* 301 U. S. 234, 57 Sup. Ct. 677, 81 L. Ed. 1061, 113 A. L. R. 228.

Mere physical presence of intangibles in a jurisdiction is not sufficient to give them a taxable situs in a jurisdiction other than that of the owner. In the instant case, part of the bonds, before having been transferred to the trust company at St. Paul, were in the possession of the Harris Trust & Savings Bank in Chicago. They were there for more than ten years in the possession of the Harris Trust & Savings Bank as agent of Mr. Ingram, the owner, who retained full control over them at all times. Reinvestments from the proceeds were made at his direction. The income from the bonds were credited to his checking account in that bank upon which he alone could draw. He had title to, control over, and the right of possession. It is clear that their situs was that of their owner at his domicile in Wisconsin.

The rest of the intangibles transferred to Minnesota consisted of stocks and the promissory note of the son, Orrin. These were in the possession of Mr. Ingram in Wisconsin prior to his taking them to Minnesota shortly before December 18, 1934, the date on which the trust indenture was made. Prior to the latter date they were not an integral part of any business conducted in Minnesota; they were not under the control of the trust company, but were merely there waiting instructions of the owner. Under the authorities cited, it must be held that on December 18th, the situs of the stocks, bonds, and note for the purpose of taxation was in Wisconsin, the domicile of the owner.

In holding that the assessment was unlawful on the ground that if any gift was made to respondent it could not be a gift of the entire estate and that no assessment was made or attempted to be made on the basis of the value of the alleged gift, and on the further ground that no gift whatever was made, the trial court said:

"I am of the opinion that the tax commission was in error in reaching its conclusion. The commission, by its decision, appeared to follow and give effect to one sentence in section 72.15 in the chapter relating to inheritance taxes and to apply that sentence in principle to a different chapter relating to gift taxes, where it did not belong and where it did not fit the facts of this case. The sentence did not belong to the gift tax chapter because it was not placed there by the legislature. It did not fit the facts of this case because it related to a different subject. It related to a case where title to an estate has once become vested in a legatee or devisee, but might afterwards become divested by the act or omission of the legatee or devisee. The facts in this case are that title has never become vested in any donee and never can become so vested unless on the happening of some future event. That distinction is vital. In one case a conditional estate is created. The condition, whether nominal or substantial, depends on the act or omission of the grantee. In the other case no estate of any kind is granted to anyone. No estate can come into

existence unless on the happening of a future event. That event does not depend on any act of any grantee or donee. That event may or may not ever happen. Before it happens, if it ever does, nothing is granted or conveyed. Only a mere expectancy or possibility is created. The difference between the two cases is the same as the difference between a condition subsequent and a condition precedent. Under one condition a vested title is conveyed and an estate is created *in præsenti.* Under the other condition, no title is conveyed; no estate is created *in præsenti,* or otherwise, and none may ever exist. The conditions are fundamentally different. They have conflicting meanings. Both cannot exist at the same time. . . . In the statutes relating to inheritance taxes, some regulations were adopted concerning titles to determine how the tax should be computed. In the statute relating to gift taxes, some regulations differing in some respects were adopted for the same purpose. None of these statutes have any bearing on the question here presented. The statute contemplates that in order to be a gift, the title and ownership of the property must pass to the donee personally or in trust for the donee. So far as I can discover, no legislative body or court ever failed to distinguish the difference between a present title and a future possibility.

"It is argued by counsel for the tax commission in substance that the assessment against the appellant, for the entire value of the trust property, can be sustained on the theory that she can lawfully be charged with the value of property which she has not yet received or may not receive on the theory of liability of joint debtors or joint tort-feasors.

"Appellant is not a joint debtor. She is not a tort-feasor, joint or otherwise. No law exists creating such status or liability. The court can make no such law. If the legislature had passed such a statute, it would be of doubtful validity."

Under the emergency gift tax law the tax must be levied against the donee on the clear market value of the gift as of the date of the gift. An assessment of $101,910.53 was made against respondent on June 18, 1937, together with delinquent interest to the date of the assessment of about $13,800, on the transfer of the property made on December 18, 1934, of the alleged value of $953,484.24, less an exemption of $15,000,

leaving a net value of $938,484.24, on which basis the assessor of incomes computed the tax in question.

It is clear that the taxing authorities made no attempt to determine the value of any certain part or portion of the trust estate to which the respondent, or other persons, might be entitled. They assessed the entire value of the whole estate against respondent. She at no time had an unconditional ownership of the whole or any part of the trust property, either of the corpus of the trust estate or the income therefrom. Under the provisions of the trust indenture, during the lifetime of her husband, respondent could draw from the net income of the trust estate only such amount as her cotrustees in their judgment and discretion deemed advisable, and upon the death of her husband, she could draw only such amount as the corporate trustee deemed advisable. As to the principal of the trust, it is provided that upon respondent's written request, approved in writing by the son, Orrin, during his lifetime, or in the event of his death, then by the corporate trustee, respondent might get a part or all of the principal. It is further provided that after respondent's death, if the son Orrin survived, then upon his written request, approved in writing by the corporate trustee, he may get any or all of the principal. In view of this provision, it is apparent that the son has an interest adverse to that of his mother in the disposition of the principal of the trust estate. It is further provided that no beneficiary under the trust shall have the power to sell, transfer, assign, incumber, or in any manner to anticipate or dispose of his or her interest in the trust estate or the income therefrom.

Appellants argue in substance that the restrictions and limitations of the trust agreement are only safeguards for the protection of the donee in the full and complete enjoyment by her of the trust estate. How full and complete this enjoyment may be is entirely in the hands and discretion of the trustees. She did not become an outright owner of any part of the trust property. The transfer was not to her as donee. It was made to the trustees. It may be said that the settlor parted with all per-

462

sonal control over the property transferred, but, during his lifetime, as one of the trustees, he has a very substantial control over the trust property, so has the son Orrin. It has been held by the United States supreme court that control by the donor over the gift, either for his own benefit or the benefit of others, or for the purpose of changing beneficiaries, renders the gift incomplete and not taxable. See *Estate of Sanford v. Commissioner of Internal Revenue*, 308 U. S. 39, 60 Sup. Ct. 51, 84 L. Ed. 20; *Rasquin v. Humphreys*, 308 U. S. 54, 60 Sup. Ct. 60, 84 L. Ed. 77; and *Hesslein v. Hoey* (2d Cir.), 91 Fed. (2d) 954.

If the reservation of any control by the donor over the gift, either for his own benefit or for the benefit of others, renders the gift incomplete and therefore not taxable, as held by the United States supreme court in the cases above cited, it logically follows that the reserved powers under the terms of the trust in the instant case results in an incompleted gift and respondent cannot be taxed on property she did not receive.

*By the Court.*—Judgment affirmed.